IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. NICHOLAS ARIZPE and REBEKAH ARIZPE, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | C.A. No. 3:18-cv-01010-G |
| PRINCIPAL LIFE INSURANCE COMPANY, | § § § | |
| Defendant. | § § § | |

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Andrew C. Whitaker
State Bar No. 21273600
andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANT
PRINCIPAL LIFE INSURANCE COMPANY

## <u>TABLE OF CONTENTS</u>

**Page**

I. SUMMARY .................................................................................................................. 1

II. ARGUMENT AND AUTHORITIES ......................................................................... 2

    A.   All of Plaintiffs' claims are barred by limitations. ............................................. 2

    B.   Principal Life has not breached the Policy or any warranties. ........................... 6

    C.   Dr. Arizpe's ambiguity/estoppel claim is without merit. ................................. 12

    D.   Dr. Arizpe's negligence claim fails as a matter of law. ................................... 13

    E.   Dr. Arizpe's negligent misrepresentation claim is without merit. .................... 14

    F.   Dr. Arizpe's statutory claims are meritless. .................................................... 17

    G.   Principal Life did not commit bad faith. ......................................................... 18

    H.   Principal Life did not commit fraud. ............................................................... 19

    I.   Principal Life is not responsible for Wyse's alleged misrepresentations. ......... 21

    J.   Dr. Arizpe cannot recover future benefits at trial. .......................................... 22

    K.   Rebekah lacks standing to assert claims against Principal Life. ....................... 23

III. CONCLUSION ........................................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Swain,*
    148 S.W.2d 921 (Tex. Civ. App.--Galveston 1941, no writ)..................................................23

*Alexander v. Turtur & Associates, Inc.,*
    146 S.W.3d 113 (Tex. 2004)...............................................................................................17

*Amarco Petroleum, Inc. v. Texas Pacific Indem. Co.,*
    889 S.W.2d 695 (Tex. App.--Houston [14th Dist.] 1994, writ denied) ....................................5

*Ashworth v. Aspect Resources LLC,*
    No. 01-01-00815-CV, 2003 WL 22053712 (Tex. App.--Houston [1st Dist.]
    Sept. 4, 2003, pet. denied)..................................................................................................14

*Bridgmon v. Array Sys. Corp.,*
    325 F.3d 572 (5th Cir. 2003) ................................................................................................6

*Brown v. Royal Maccabees Life Ins. Co.,*
    137 F.3d 1236 (10th Cir. 1998) ..........................................................................................17

*Burton v. State Farm Mut. Auto. Ins. Co.,*
    869 F. Supp. 480 (S.D. Tex. 1994), *aff'd,* 66 F.3d 319 (5th Cir. 1995) ................................20

*Calvi v. Prudential Securities, Inc.,*
    861 F. Supp. 69 (C.D. Cal. 1994) ........................................................................................6

*Casassa v. Liberty Life Ins. Co.,*
    949 F. Supp. 825 (M.D. Ala. 1996) .....................................................................................21

*Casson v. Nationwide Ins. Co.,*
    455 A.2d 361 (Del. 1982) .....................................................................................................8

*Chartis Specialty Ins. Co. v. Tesoro Corp.,*
    113 F. Supp. 3d 924 (W.D. Tex. 2015), *aff'd,* 840 F.3d 205 (5th Cir. 2016).........................23

*In re Coastal Plains, Inc.,*
    179 F.3d 197 (5th Cir. 1999), *cert. denied,* 528 U.S. 1117 (2000)...........................................5

*Coker v. Coker,*
    650 S.W.2d 391 (Tex. 1983)...............................................................................................12

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
    918 S.W.2d 453 (Tex. 1996)................................................................................................5

*Continental Cas. Co. v. Bock*,
    340 S.W.2d 527 (Tex. Civ. App.--Houston 1960, writ ref'd n.r.e.) ........................................16

*DeSantis v. Wackenhut Corp.*,
    793 S.W.2d 670 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991)...........................................19

*E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*,
    137 S.W.3d 311 (Tex. App.--Beaumont 2004, no pet.)..............................................18, 20, 21

*Emscor Mfg., Inc. v. Alliance Ins. Group*,
    879 S.W.2d 894 (Tex. App.--Houston [14th Dist.] 1994, writ denied)................................12

*Federal Land Bank Ass'n of Tyler v. Sloane*,
    825 S.W.2d 439 (Tex. 1991)........................................................................................................14

*Franklin Life Ins. Co. v. Faggard*,
    296 S.W.2d 335 (Tex. Civ. App.--San Antonio 1956, writ ref'd n.r.e.)................................17

*Frith v. Guardian Life Ins. Co. of America*,
    9 F. Supp. 2d 744 (S.D. Tex. 1998) ........................................................................................15

*Great Am. Reserve Ins. Co. v. Mitchell*,
    335 S.W.2d 707 (Tex. Civ. App.--San Antonio 1960, writ ref'd) ...........................................13

*Greater Houston Transp. Co. v. Phillips*,
    801 S.W.2d 523 (Tex. 1990)........................................................................................................13

*Gwizdala v. Comm'r of Social Sec.*,
    No. 98-1525, 191 F.3d 452, 1999 WL 777534 (6th Cir. Sept. 16, 1999)................................9

*HECI Exploration Co. v. Neel*,
    982 S.W.2d 881 (Tex. 1998)..........................................................................................................2

*Higginbotham v. State Farm Mut. Auto. Ins. Co.*,
    103 F.3d 456 (5th Cir. 1997) ....................................................................................................18

*Hunt v. State*,
    737 S.W.2d 4 (Tex. App.--Corpus Christi 1987, no writ) ......................................................22

*Hunton v. Guardian Life Ins. Co. of America*,
    243 F. Supp. 2d 686 (S.D. Tex. 2002), *aff'd*, 71 F. App'x 441
    (5th Cir. 2003)..................................................................................................4, 6, 20, 21

*Jeffries v. Pat A. Madison, Inc.*,
    269 S.W.3d 689 (Tex. App.--Eastland 2008, no pet.) ...........................................................16

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
    962 S.W.2d 507 (Tex. 1998)..........................................................................................................3

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
546 S.W.3d 648 (Tex. 2018).................................................................16

*Kansa Reinsurance Co. v. Congressional Mortg. Corp. of Texas*,
20 F.3d 1362 (5th Cir. 1994) ...............................................................19

*Khoei v. Stonebridge Life Ins. Co.*,
No. H-13-2181, 2014 WL 585399 (S.D. Tex. Feb. 14, 2014).....................4, 7, 18

*Kreit v. St. Paul Fire & Marine Ins. Co.*,
No. H-04-1600, 2006 WL 322587 (S.D. Tex. Feb. 10, 2006)................20

*Lumbermans Mut. Cas. Co. v. Klotz*,
251 F.2d 499 (5th Cir. 1958) ...............................................................22

*Lyons v. Millers Cas. Ins. Co. of Texas*,
866 S.W.2d 597 (Tex. 1993)................................................................18

*Maintain, Inc. v. Maxson-Mahoney-Turner, Inc.*,
698 S.W.2d 469 (Tex. App.--Corpus Christi 1985, writ ref'd n.r.e.) ....................22

*Martinez Tapia v. Chase Manhattan Bank, N.A.*,
149 F.3d 404 (5th Cir. 1998) ...............................................................20

*McKillip v. Employers Fire Ins. Co.*,
932 S.W.2d 268 (Tex. App.--Texarkana 1996, no writ)........................22

*Merbitz v. Great Nat'l Life Ins. Co.*,
599 S.W.2d 655 (Tex. Civ. App.--Texarkana 1980, writ ref'd n.r.e.) ....................22

*Miller v. Allstate Texas Lloyd's*,
No. H-17-1684, 2017 WL 3335997 (S.D. Tex. Aug. 4, 2017)................16

*Mobley v. New York Life Ins. Co.*,
295 U.S. 632 (1935)............................................................................23

*Montgomery v. Apfel*,
No. 4:98-CV-205-DNN, 1999 WL 236595 (E.D. Mo. Mar. 24, 1999)....................9

*Mutual Life Ins. Co. of N.Y. v. Ellison*,
223 F.2d 686 (5th Cir.), *cert. denied*, 350 U.S. 845 (1955)......................8

*Pankow v. Colonial Life Ins. Co. of Texas*,
932 S.W.2d 271 (Tex. App.--Amarillo 1996, writ denied)....................20

*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*,
964 F.2d 478 (5th Cir. 1992) ...............................................................12

*Prestige Ford Garland Ltd. Partnership v. Morales*,
 336 S.W.3d 833 (Tex. App.--Dallas 2011, no pet.) ..................................................3

*Provident American Ins. Co. v. Castaneda*,
 988 S.W.2d 189 (Tex. 1998)..................................................................................18

*Provident Life & Acc. Ins. Co. v. Knott*,
 128 S.W.3d 211 (Tex. 2003)................................................................................2, 3

*Reliable Life Ins. Co. v. Steptoe*,
 471 S.W.2d 430 (Tex. Civ. App.--Tyler 1971, no writ) ...........................................8

*Republic Ins. Co. v. Stoker*,
 903 S.W.2d 338 (Tex. 1995)..................................................................................18

*Ribble v. Roberts*,
 180 S.W. 620 (Tex. Civ. App.--Austin 1915, no writ) ..........................................21

*Roland v. Transamerica Life Ins. Co.*,
 570 F. Supp. 2d 871 (N.D. Tex. 2008), *aff'd*, 337 F. App'x 389 (5th Cir. 2009)....................5

*S.V. v. R.V.*,
 933 S.W.2d 1 (Tex. 1996).......................................................................................3

*Saelee v. Chater*,
 94 F.3d 520 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).............................9

*Savage v. Psychiatric Institute of Bedford, Inc.*,
 965 S.W.2d 745 (Tex. App.--Fort Worth 1998, pet. denied)...................................5

*Shindler v. Mid-Continent Life Ins. Co.*,
 768 S.W.2d 331 (Tex. App.--Houston [14th Dist.] 1989, no writ)...........................5

*Southland Life Ins. Co. v. Dunn*,
 71 S.W.2d 1103 (Tex. Civ. App.--El Paso 1934, writ dism'd)................................8

*Southwestern Bell Telephone Co. v. DeLanney*,
 809 S.W.2d 493 (Tex. 1991)..................................................................................13

*Spoljaric v. Percival Tours, Inc.*,
 708 S.W.2d 432 (Tex. 1986)..................................................................................13

*State Farm Lloyds v. Page*,
 315 S.W.3d 525 (Tex. 2010)..................................................................................18

*Texas Farmers Ins. Co. v. McGuire*,
 744 S.W.2d 601 (Tex. 1988)..................................................................................12

*Thigpen v. Locke,*
  363 S.W.2d 247 (Tex. 1962)................................................................5

*Turman v. Colonial Life & Acc. Ins. Co.,*
  No. 3:06CV125 B-A, 2008 WL 352490 (N.D. Miss. Feb. 7, 2008)..........................................7

*U.S. Fire Ins. Co. v. Williams,*
  955 S.W.2d 267 (Tex. 1997)................................................................18

*Universe Life Ins. Co. v. Giles,*
  950 S.W.2d 48 (Tex. 1997)................................................................18

*Vaught v. Showa Denko K.K.,*
  107 F.3d 1137 (5th Cir.), *cert. denied*, 522 U.S. 817 (1997)................................................................3

*Velsicol Chemical Corp. v. Winograd,*
  956 S.W.2d 529 (Tex. 1997)................................................................5

*Westview Drive Investments, LLC v. Landmark American Ins. Co.,*
  522 S.W.3d 583 (Tex. App.--Houston [14th Dist.] 2017, pet. denied)................................................................22

*White v. Provident Life & Acc. Ins. Co.,*
  No. A-96-CA-639 SS, Slip Op. (W.D. Tex. Nov. 15, 1996)................................................................24

*Zavala Land & Water Co. v. Tolbert,*
  165 S.W. 28 (Tex. Civ. App.--Dallas 1914, no writ)................................................................16

**Statutes**

Tex. Bus. & Com. Code § 17.46................................................................17

Tex. Bus. & Com. Code § 17.50(a)................................................................17

Tex. Bus. & Com. Code § 17.50(a)(1)(B)................................................................17

Tex. Bus. & Com. Code § 17.565................................................................2, 5

Tex. Civ. Prac. & Rem. Code § 16.003(a)................................................................2

Tex. Civ. Prac. & Rem. Code § 16.004(a)................................................................3

Tex. Ins. Code §§ 541.051-.061................................................................17

Tex. Ins. Code § 541.151(2)................................................................17

Tex. Ins. Code § 541.162(a)................................................................2, 5

Tex. Ins. Code § 4001.051(b)................................................................22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DR. NICHOLAS ARIZPE and           §
REBEKAH ARIZPE,                   §
                                  §
       Plaintiffs,                §
                                  §
v.                                §        C.A. No. 3:18-cv-01010-G
                                  §
PRINCIPAL LIFE INSURANCE          §
COMPANY,                          §
                                  §
       Defendant.                 §

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Principal Life Insurance Company ("Principal Life") files this brief in support

of Defendant's Motion for Summary Judgment (the "Motion") (Document 26) and states[1]:

## I. SUMMARY

The summary-judgment evidence establishes that Principal Life is entitled to judgment as

a matter of law on all of Plaintiffs' claims.  First, all of Plaintiffs' claims are barred by

limitations, as Dr. Arizpe received the original of the Policy by no later than October 31, 2011,

which was almost six years before they filed this action, and their possession of the Policy gave

them actual notice that (1) the Capital Sum Benefit Rider and the Catastrophic Disability Benefit

Rider did not include the provisions in the Catastrophic Disability Table on which they now rely

and (2) the Illustration was not attached to and made a part of the Policy.  Second, Principal Life

properly denied Dr. Arizpe's claims for the Disputed Benefits, as he is not entitled to such

benefits based on the terms of either the riders as they appear in the Policy or the Catastrophic

---

[1] Unless otherwise indicated, defined terms in the Motion will be given their same meanings
herein, and all emphases are supplied by counsel.

Disability Table.  Third, all of Dr. Arizpe's misrepresentation-based claims fail because the admonitions in the Illustration, which state that the terms of the Policy will control and that policy provisions may vary from state to state, mean that the Illustration does not contain any misrepresentations and that, even if it did, any reliance by Dr. Arizpe on the Illustration's terms was rendered unreasonable as a matter of law when he received the Policy and failed to exercise his right to return it pursuant to its "free look" provision.  Fourth, Principal Life had a reasonable basis for its refusal to pay the Disputed Benefits, which is fatal to Dr. Arizpe's claim-based bad faith and statutory claims.  Fifth, Dr. Arizpe cannot recover future benefits at trial under the Policy, which remains in force to this day and has not been repudiated by Principal Life; instead, any recovery is limited to the unpaid benefits through trial.  Sixth, Rebekah is neither the owner of nor the insured under the Policy, and she thus lacks standing to assert any claims against Principal Life.  For some or all of these reasons, the Court should grant the Motion and dismiss all of Plaintiffs' claims with prejudice.

## II.  <u>ARGUMENT AND AUTHORITIES</u>

### A.  <u>All of Plaintiffs' claims are barred by limitations.</u>

Initially, all of Plaintiffs' claims are barred by limitations, as Dr. Arizpe indisputably received the original of the Policy by no later than October 31, 2011, which was almost six years before Plaintiffs filed this action.  Under Texas law, Plaintiffs' claims for negligence, negligent misrepresentation, bad faith, and violations of the DTPA and the Insurance Code are subject to a two-year limitations period,[2] whereas their claims for breach of contract, promissory estoppel,

---

[2] *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (negligence); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (negligent misrepresentation); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (bad faith); Tex. Bus. & Com. Code § 17.565 (DTPA); Tex. Ins. Code § 541.162(a) (Insurance Code).

and fraud are subject to a four-year limitations period.[3]  The limitations period begins to run on the date that the cause of action accrues, and in determining when a claim accrues, Texas follows the "legal injury" test, under which "[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy."[4]  This is true even if the plaintiff is unaware of the injury or if all of the damages have not yet accrued.[5]

One of Plaintiffs' primary allegations is that Wyse (and, by extension, Principal Life) informed them that the Catastrophic Disability Table in the Illustration applied to both the Catastrophic Disability Benefit Rider and the Capital Sum Benefit Rider and that the Policy should have included these more liberal provisions.[6]  Importantly, however, Plaintiffs knew, upon Dr. Arizpe's receipt of the original of the Policy in 2011, that neither one of those riders included the terms in the Catastrophic Disability Table.  Dr. Arizpe admitted at his deposition that he received the original of the Policy by no later than October 31, 2011, has had the Policy in his possession since that date, could have determined, if he had complied with Principal Life's instruction that he read the Policy, that the Policy and the Illustration were inconsistent with respect to the definition of Catastrophic Disability, and did not avail himself of his right to return

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 16.004(a) (breach of contract and fraud); *Prestige Ford Garland Ltd. Partnership v. Morales*, 336 S.W.3d 833, 836 (Tex. App.--Dallas 2011, no pet.) (promissory estoppel).

[4] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998).

[5] *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (stating that a claim accrues when "a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred"); *see also Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir.) (noting that accrual occurs on the date the plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the defendant, even if the plaintiff is unaware of the injury), *cert. denied*, 522 U.S. 817 (1997).  "The fact that damage may continue to occur for an extended period after denial does not prevent limitations from starting to run."  *Knott*, 128 S.W.3d at 221.

[6] Document 25 (Second Amended Complaint), ¶¶ 9, 19-30, 59-60, 67, 69, 75.

the Policy within 30 days.[7]  Since Plaintiffs did not file this action until September 25, 2017, which was almost six years after Dr. Arizpe received the Policy, limitations bar all of their claims.[8]

This analysis is appropriate even though Plaintiffs filed this action within two years of Principal Life's letter informing Dr. Arizpe that he was not entitled to payment of any of the Disputed Benefits.  As a review of the Second Amended Complaint makes clear, the majority of Plaintiffs' causes of action are not based on the handling of Dr. Arizpe's claims under the Policy; instead, they are based on Principal Life's failure to include the Catastrophic Disability Table from the Illustration in the Policy.  For example, Plaintiffs' claims for negligence and negligent misrepresentation, breach of the duty of good faith and fair dealing, violations of the DTPA and Texas Insurance Code, ambiguity/estoppel, and fraud all turn on the sale of the Policy and Principal Life's failure to include the Catastrophic Disability Table in the Catastrophic Disability Benefits Rider and the Capital Sum Benefit Rider.[9]

In the Second Amended Complaint, Plaintiffs seek to avoid limitations by invoking the discovery rule.[10]  Under Texas law, the discovery rule applies only if (1) the injury is inherently

---

[7] App. 069.

[8] *See Hunton v. Guardian Life Ins. Co. of America*, 243 F. Supp. 2d 686, 698-705 (S.D. Tex. 2002), *aff'd*, 71 F. App'x 441 (5th Cir. 2003); *see also Khoei v. Stonebridge Life Ins. Co.*, No. H-13-2181, 2014 WL 585399, at *7 (S.D. Tex. Feb. 14, 2014) ("Claims that an insurer misrepresented policy coverage in selling the policy accrue when the policy is issued.").

[9] Document 25 (Second Amended Complaint), ¶¶ 54-75.  Plaintiffs' breach of contract/breach of warranty claims, as well as their other claims, to the extent they are based on Principal Life's denial of Dr. Arizpe's claims, are barred as a matter of law for the reasons set forth in the ensuing sections.

[10] Document 25 (Second Amended Complaint), ¶ 85.

undiscoverable and (2) the evidence of the injury is objectively verifiable.[11]   To be "inherently undiscoverable," the existence of the injury must not be "ordinarily discoverable, even though due diligence has been used."[12]   An injury is not inherently undiscoverable merely because a plaintiff did not discover it; rather, the injury must be "by nature unlikely to be discovered within the prescribed limitations period despite due diligence."[13]

Under these standards, the discovery rule is inapplicable, as Plaintiffs discovered (or should have discovered in the exercise of reasonable diligence) the inconsistencies between the Catastrophic Disability Table and the Policy more than four years before they filed suit. Principal Life delivered the Policy to Dr. Arizpe by no later than October 31, 2011.[14]   A party to a contract is charged with the obligation of reading the contract and is deemed to know its contents.[15]   If he had complied with Principal Life's instruction--on the very first page of the Policy--to read the Policy carefully, Dr. Arizpe would have seen that, regardless of what was in the Illustration or what Wyse had allegedly told him, neither the Catastrophic Disability Benefit Rider nor the Capital Sum Benefit Rider included the additional terms in the Catastrophic

---

[11] *Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997); *see also Savage v. Psychiatric Institute of Bedford, Inc.*, 965 S.W.2d 745, 750 (Tex. App.--Fort Worth 1998, pet. denied) ("The discovery rule only applies in limited circumstances, where at the time the injury arose, the plaintiff did not and *could not* know of the injury.").   Both the DTPA and the Texas Insurance Code essentially codify the discovery rule.  *See* Tex. Bus. & Com. Code § 17.565 (requiring that an action be commenced within two years of the allegedly wrongful act or within two years after the person bringing the action discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the allegedly wrongful act); Tex. Ins. Code § 541.162(a) (requiring that an action be commenced within two years of the date the unfair method of competition or the unfair or deceptive act or practice occurred or the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred).

[12] *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).

[13] *In re Coastal Plains, Inc.*, 179 F.3d 197, 215 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000).

[14] App. 041-042, 123, 250-251.

[15] *See Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962); *Amarco Petroleum, Inc. v. Texas Pacific Indem. Co.*, 889 S.W.2d 695, 699 (Tex. App.--Houston [14th Dist.] 1994, writ denied); *Shindler v. Mid-Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex. App.--Houston [14th Dist.] 1989, no writ); *see also Roland v. Transamerica Life Ins. Co.*, 570 F. Supp. 2d 871, 881 (N.D. Tex. 2008) ("An insured is deemed to be on notice of all terms of an insurance policy."), *aff'd*, 337 F. App'x 389 (5th Cir. 2009).

Disability Table.  And, if there was any uncertainty on their end, Plaintiffs were free to contact Principal Life with any questions they may have had.[16]  Since Dr. Arizpe's receipt of the Policy gave them *actual* notice that these riders did not include the additional terms in the Catastrophic Disability Table, Plaintiffs cannot rely on the discovery rule,[17] and all of their claims are barred by limitations.

**B.      Principal Life has not breached the Policy or any warranties.**

Independent of the foregoing, Dr. Arizpe's breach of contract/breach of warranty claim is wholly without merit.[18]  In his breach of contract/breach of warranty claim, Dr. Arizpe alleges that Principal Life erred in determining that the Policy did not cover all of Dr. Arizpe's claims.[19] Under the traditional formulation of this claim, the plaintiff alleges that the parties had a written agreement that the defendant breached, resulting in damages.[20]  Here, the written agreement between the parties is the Policy, and Principal Life has now paid the one-time Supplemental Health Benefit in full and is paying on a monthly basis all of the Disability Benefits to which Dr. Arizpe is potentially entitled.  In turn, Principal Life has refused to pay the Disputed Benefits

---

[16] *See Hunton*, 243 F. Supp. 2d at 706 n.35 (observing that, if the plaintiffs did not understand the mechanics of the policy and their obligation to pay premiums, they "should have obtained further information in writing").

[17] *See id.* at 699 (noting that the terms of an insurance policy "are easily discoverable"). This is true even though Plaintiffs may not have sustained any financial loss at the time Dr. Arizpe received the Policy.  *See Calvi v. Prudential Securities, Inc.*, 861 F. Supp. 69, 72 (C.D. Cal. 1994) (holding that limitations barred the plaintiff's claims where she received written documents contrary to the broker's alleged representations and that it was irrelevant whether she had been financially damaged because she could have brought a rescission action).

[18] As detailed in section II.K. below, Rebekah is neither the owner of nor the insured under the Policy.  Since Rebekah is a stranger to the Policy, she lacks standing to assert any claims against Principal Life, and all of her claims should be dismissed with prejudice.  However, in the event the Court finds that she may assert some or all of the claims in the Second Amended Complaint, her claims fail for the same reasons as do Dr. Arizpe's claims.

[19] Document 25 (Second Amended Complaint), ¶¶ 50-53.

[20] *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (noting that the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach").

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – Page 6

based on the terms of those riders *as they appear in the Policy*,[21] and as detailed below, it did not breach the Policy in determining that Dr. Arizpe is not entitled to these benefits.

To be entitled to Catastrophic Disability Benefits and Presumptive Disability Benefits, Dr. Arizpe must show (among other requirements) that he has suffered the "total loss of use for any and every purpose or activity without any possibility of recovery of" his power of speech, his hearing in both ears, the sight of both eyes, or "[t]he use of both hands, both feet, or one hand and one foot."[22]   At their depositions, Plaintiffs admitted that Dr. Arizpe does not satisfy either of these riders, as he can still speak, hear, see, use both of his hands, and use his left foot.[23]   Dr. Arizpe further testified:

> Q.   Here you do not believe you're entitled to the Catastrophic Disability Benefit as it appears in the policy?
>
> A.   Correct.
>
>            * * *
>
> Q.   So you don't satisfy the Presumptive Disability Benefit as it appears in the policy, correct?
>
> A.   Correct.[24]

Dr. Arizpe's own testimony confirms that he is not entitled to either Catastrophic Disability Benefits or Presumptive Disability Benefits as a matter of law.

---

[21] *See Khoei*, 2014 WL 585399, at *5 ("After construing the terms of the policy as a whole, this court concludes that the policy unambiguously covers only the loss of life, the loss of one or both hands or feet, and the complete loss of sight in one or both eyes.").

[22] App. 149, 154.   The requirement that the "total loss of use" be "without any possibility of recovery" means that whatever limitations Dr. Arizpe may have experienced in the weeks and months following his seizure did not require payment of the Disputed Benefits.   *See Turman v. Colonial Life & Acc. Ins. Co.*, No. 3:06CV125 B-A, 2008 WL 352490, at *3 (N.D. Miss. Feb. 7, 2008) (observing that, even though the plaintiff may have suffered a "total" loss of use that appeared at some point to be "irrecoverable," subsequent improvements in her condition established that it was not "irrecoverable").

[23] App. 050-051, 063-064, 066, 270.

[24] App. 064, 066.

Nor is Dr. Arizpe entitled to payment of the Capital Sum Benefit. To recover this benefit, Dr. Arizpe must show that he has suffered the "total loss of use for any and every purpose or activity without any possibility of recovery of" the use of a hand or foot or the sight of an eye.[25] As noted above, Dr. Arizpe can see out of both eyes, has full use of his left hand and left foot, and has at least some use of his right hand; however, he claims that he "can't use [his] right foot for pretty much anything."[26] Once again, Dr. Arizpe's analysis misses the mark, as he is indisputably able to walk on his own, without any assistance, through the use of his right ankle orthotic device,[27] which is a support or brace that helps keep the ankle joint in a neutral position.

As courts have repeatedly recognized, an insured cannot predicate a disability claim on a condition that can be remedied through reasonable efforts, such as the use of glasses, hearing aids, or other adaptive devices.[28] Indeed, in *Steptoe*, the court held that an insured was not entitled to indemnity for "complete loss of sight" because the evidence established that the loss of sight was not "irrecoverable," as there was a 75% to 90% chance of regaining useful vision in the eye *through surgery*.[29] The court stated:

> [L]oss of sight which can be recovered, regained or remedied through proper medical or surgical treatment is not to be considered an irrevocable loss unless such medical or surgical treatment would not be undergone by an ordinarily prudent person under the same or similar circumstances.[30]

---

[25] App. 148.

[26] App. 062.

[27] App. 062, 067, 240, 264.

[28] *See Reliable Life Ins. Co. v. Steptoe*, 471 S.W.2d 430, 432 (Tex. Civ. App.--Tyler 1971, no writ); *Southland Life Ins. Co. v. Dunn*, 71 S.W.2d 1103, 1106 (Tex. Civ. App.--El Paso 1934, writ dism'd); *see also Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 367-368 (Del. 1982); *Mutual Life Ins. Co. of N.Y. v. Ellison*, 223 F.2d 686, 688-691 (5th Cir.), *cert. denied*, 350 U.S. 845 (1955*)*.

[29] 471 S.W.2d at 431.

[30] *Id.* at 432; *see also Dunn*, 71 S.W.2d at 1106 (finding that the term "irrecoverable" means that, if sight could be "recovered, regained, or remedied, by proper medical or surgical treatment and which treatment would be undergone by an ordinarily prudent person under the same or similar circumstances, [it] is not to be justly considered as an irrecoverable entire loss"); *Casson*, 455 A.2d at 366 ("If the insured fails or refuses to submit to reasonable treatment recommended by competent physicians, he is precluded from recovery for the disability for the period the cure would have become effective.").

Further support for this conclusion may be found in the Social Security disability context, in which courts routinely hold that an insured is not disabled if reasonable treatment would ameliorate the disability.[31]

As noted above, Dr. Arizpe can see out of both eyes, use both of his hands, and use his left foot, meaning that he is entitled to the Capital Sum Benefit if, and only if, he can show the "total loss of use for any and every purpose or activity without any possibility of recovery of" his right foot. Plaintiffs both testified, however, that Dr. Arizpe is able to ambulate on his own without assistance by wearing an orthotic device on his right ankle and foot,[32] and that testimony, coupled with the authorities cited above, establish that he does not qualify for the Capital Sum Benefit.

Finally, Dr. Arizpe's repeated references to the Catastrophic Disability Table do not entitle him to payment of any of the Disputed Benefits. As noted in both the Policy and the Illustration, the terms of the Policy control and cannot be varied by either extraneous documents (such as the Illustration) or any alleged statements from Wyse. For example, the "Entire Contract" section of the Policy states: "The [P]olicy, the attached applications, and any attached riders or endorsements make up the entire contract."[33] In Part C of the Application, Dr. Arizpe acknowledged his understanding and agreement that "no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to

---

[31] *See Gwizdala v. Comm'r of Social Sec.*, No. 98-1525, 191 F.3d 452, 1999 WL 777534, at *5 (6th Cir. Sept. 16, 1999) (holding that the claimant's hearing impairment would not be considered disabling because he "failed to comply with [the doctor's] alternate recommendations to (1) have surgery, or (2) use a hearing aid"); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (affirming decision that claimant was not disabled by reason of hearing impairment where person was "capable of normal hearing with the assistance of a hearing aid"), *cert. denied*, 519 U.S. 1113 (1997); *Montgomery v. Apfel*, No. 4:98-CV-205-DNN, 1999 WL 236595, at *5 (E.D. Mo. Mar. 24, 1999) ("The court agrees with defendant that plaintiff's hearing impairment, substantial though it may be, is not disabling because it is remediable with the use of a hearing aid.").

[32] App. 050, 062, 270-271.

[33] App. 145.

make, change, or discharge any contract, or to waive any of [Principal Life's] rights."[34]   The Policy also provides that only Principal Life's "corporate officers may modify or waive anything in, or approve changes to, the [P]olicy" and that "[n]o one else, including the agent or broker, has the authority to change the [P]olicy or waive any provision."[35]   And, even though Page 1 of the Application, which *is* attached to and made part of the Policy,[36] stated "see illustration attached," Principal Life informed Dr. Arizpe that the Illustration was not part of the Application--and, by extension, was not part of the Policy--when it delivered the original of the Policy to him in 2011 and did not include a copy of the Illustration in it.

Even if the Court finds a fact issue on whether all or part of the Illustration is part of the Policy, which is a conclusion the Court should not reach, summary judgment is nonetheless appropriate.   The Catastrophic Disability Table provides in pertinent part:



Dr. Arizpe admitted at his deposition that he does not satisfy the Cognitively Impaired

---

[34] App. 121.
[35] App. 145.
[36] The first page of the Policy instructed Dr. Arizpe to "[p]lease review the copy of the application attached to this policy" and stated that "[t]he application is part of the policy."  App. 124.

and Presumptively Disabled boxes in this table,[37] meaning that, to recover benefits under the Catastrophic Disability Table, he must be "[u]nable to perform two or more Activities of Daily Living (ADL) without assistance."  Dr. Arizpe also admitted that he does not need help with continence, dressing, eating/feeding, or toileting, which are four of the six listed ADLs.[38] Although Dr. Arizpe claims he occasionally needs help with transferring, the professionals at the Centre for Neuro Skills concluded in August 2017 that he was "independent with all aspects of transfers," and since Rebekah works full-time as a teacher, he is on his own for seven to eight hours a day, when he must handle all transfers by himself.[39]  The undisputed summary-judgment evidence also reveals:

- In his report dated October 18, 2016, Dr. Daniel Hamstra, who was evaluating the potential use of proton therapy, noted that Dr. Arizpe was able to transition and take care of his activities of daily living on his own[40];

- Plaintiffs took one-week vacations in 2017 to Florida and 2018 to the Bahamas with their two children, and they did not take anyone with them to assist with Dr. Arizpe's care[41];

- Dr. Arizpe is able to get into and drive a golf cart, which he uses to go to (among other places) the gym he regularly works out at (which is a 10-minute drive) and the home of Rebekah's mother (which is roughly a mile from their house)[42]; and

- Since his discharge from the Centre of Neuro Skills in August 2017, Dr. Arizpe has been able to walk on his own with his orthotic device and without a walker.[43]

All told, Principal Life has complied with all of its obligations under the Policy, properly determined that Dr. Arizpe is not entitled to any of the Disputed Benefits, and cannot be liable for breach of contract or breach of warranty.

---

[37] App. 064.
[38] App. 065.
[39] App. 058-059, 066, 231-232.  Rebekah worked full-time as a teacher from early 2018 through May 2018 and since August 13, 2018.  App. 244
[40] App. 046, 181.
[41] App. 052-053.
[42] App. 054, 068, 265.
[43] App. 062, 067, 264.

C.      **Dr. Arizpe's ambiguity/estoppel claim is without merit**.

Next, Dr. Arizpe contends that the Policy is ambiguous, and should thus be construed in his favor, and that Principal Life should be estopped from denying that the Disputed Benefits are payable.[44]  Of course, ambiguity is not a cause of action; rather, whether a contract is ambiguous is a question of law for the Court's determination,[45] and the applicable canons of construction are then applied to see if the ambiguity can be resolved.  Distilled to its essence, Dr. Arizpe's position is not that these riders are unclear or subject to multiple reasonable interpretations; instead, he contends that the Capital Sum Benefit Rider and the Catastrophic Disability Benefits Rider should be *rewritten* to incorporate the additional terms in the Catastrophic Disability Table.  As detailed herein, Dr. Arizpe does not satisfy these riders as they appear in the Policy, and the terms of the Catastrophic Disability Table cannot be used to vary the Policy.  But, even if such table is considered part of the Policy, Dr. Arizpe is not unable to perform two ADLs without assistance.  In any event, unless and until there is an actual dispute as to whether Dr. Arizpe satisfies the terms of these riders as they appear in the Policy, ambiguity is not an issue.

In turn, Texas courts have repeatedly held that estoppel cannot be used to create insurance coverage where none exists under the terms of an insurance policy.[46]  As one court has observed:

> Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks

---

[44] Document 25 (Second Amended Complaint), ¶¶ 69-71.

[45] *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

[46] *See, e.g.*, *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602-03 (Tex. 1988); *Emscor Mfg., Inc. v. Alliance Ins. Group*, 879 S.W.2d 894, 904 (Tex. App.--Houston [14th Dist.] 1994, writ denied); *see also Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 480-81 (5th Cir. 1992).

covered by a policy.  In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy.[47]

Here, instead of seeking forfeiture of the Policy, Principal Life has paid full Disability Benefits to Dr. Arizpe and the one-time Supplemental Health Benefit, and it adjudicated his claims for the Disputed Benefits based on the Policy's provisions.  Since he is improperly attempting to rewrite the Policy through the wholesale incorporation of the Catastrophic Disability Table into the Policy, Dr. Arizpe's invocation of estoppel is without merit.

**D.     Dr. Arizpe's negligence claim fails as a matter of law.**

Dr. Arizpe's negligence claim also fails as a matter of law.  As he acknowledges in the Second Amended Complaint,[48] to prevail on this claim, Dr. Arizpe must establish that Principal Life owed him a legal duty that it breached, which proximately caused his damages.[49]  Other than listing these elements, however, Dr. Arizpe does not detail any factual allegations in support of this claim.  Dr. Arizpe apparently believes that Principal Life was negligent because it has refused to pay the Disputed Benefits to him.  This is nothing more than an attempt to re-cast a breach of contract claim into a negligence claim.  Texas courts have recognized, however, the failure to perform the terms of the contract is a breach of contract, not a tort.[50]  Moreover, the "independent injury rule" bars recovery in tort where the only loss or damage is the subject matter of the contract.[51]

Principal Life declined to pay the Disputed Benefits to Dr. Arizpe because they were not payable under the Policy.  It is difficult to see how Principal Life owed some sort of duty to Dr.

---

[47] *Great Am. Reserve Ins. Co. v. Mitchell*, 335 S.W.2d 707, 708 (Tex. Civ. App.--San Antonio 1960, writ ref'd).
[48] Document 25 (Second Amended Complaint), ¶ 55.
[49] *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).  The existence of a duty is a question of law for the Court.  *Id.*
[50] *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).
[51] *See Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

Arizpe that is not contained in the Policy, especially in light of the fact that Principal Life has to date paid or provided over $450,000.00 in benefits to him under that agreement.[52]   In turn, Dr. Arizpe seeks through his negligence claim to recover the amounts he contends should be paid under the Policy, confirming that this claim arises solely from a contract and is not cognizable in tort.   All told, Dr. Arizpe's negligence claim fails as a matter of law, and Principal Life is entitled to summary judgment on it.

**E.      Dr. Arizpe's negligent misrepresentation claim is without merit.**

Summary judgment is also appropriate on Dr. Arizpe's claim for negligent misrepresentation.   To prevail on this claim, Dr. Arizpe must show that (1) Principal Life made a representation in the course of its business or in a transaction in which it had a pecuniary interest, (2) it supplied false information for the guidance of others in their business, (3) it did not exercise reasonable care in obtaining or communicating the information, and (4) Dr. Arizpe suffered pecuniary loss by justifiably relying on the representation.[53]   Although the negligent misrepresentation claim in the Second Amended Complaint is not particularly specific,[54] Dr. Arizpe presumably bases such claim on Principal Life's failure to include the Catastrophic Disability Table from the Illustration in the Policy.   Dr. Arizpe's claim fails as a matter of law for several reasons.

First, this claim is barred by limitations.   Since Dr. Arizpe did not file suit within two years of Principal Life's issuance and delivery of the Policy, which put him on notice that the

---

[52] App. 003.
[53] *See Ashworth v. Aspect Resources LLC*, No. 01-01-00815-CV, 2003 WL 22053712, at *3 (Tex. App.--Houston [1st Dist.] Sept. 4, 2003, pet. denied); *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).
[54] *See* Document 25 (Second Amended Complaint), ¶ 56 (merely alleging the elements of a negligent misrepresentation claim).

terms of the Catastrophic Disability Table were not included, his negligent misrepresentation is time-barred.

Second, this claim fails because Principal Life has not made a misrepresentation. According to Dr. Arizpe, the requisite misrepresentation may be found in the Illustration, which includes the Catastrophic Disability Table and states that it is "valid for presentation in Texas." Importantly, however, neither the Catastrophic Disability Table nor the rest of the Illustration are false in and of themselves; instead, the Illustration *repeatedly* states that it is not the policy, that the policy, when issued, will control, that policy provisions may vary in some states, and that Dr. Arizpe should review the Policy for the applicable terms:

- Immediately beneath Catastrophic Disability Table, the Illustration states: "Policy and rider definitions and provisions may vary in some states.  Please read your policy carefully for exact definitions in your state."[55]

- The ninth page of the Illustration states: "This illustration is a general description, but is not the policy, and does not modify the provisions of any policy or rider. Policy definitions and provisions may vary in some states.  Please read your policy carefully for exact definitions in your state.  This policy contains certain terms, exclusions and limitations."[56]

- The twelfth page of the Illustration states: "This Illustration is a general description, it is not the policy, and does not modify or change the provisions of any policy or rider.  Policy definitions and provisions may vary by state, read your policy carefully for the exact definitions and provisions."[57]

These admonitions, which Dr. Arizpe wholly ignores in the Second Amended Complaint, must be given meaning, and they establish that Principal Life did not make a misrepresentation.[58]

---

[55] App. 109.  Plaintiffs conveniently omit these admonitions in the picture of the Catastrophic Disability Table that they include in the Second Amended Complaint.  *See* Document 25 (Second Amended Complaint), ¶ 20.

[56] App. 108.

[57] App. 111.

[58] *See, e.g.*, *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 744, 745 (S.D. Tex. 1998) (granting a motion to dismiss the plaintiff's fraud claims where the illustrations at issue "are clear, unambiguous, and fully represent that they are not guarantees and that actual future dividends may be lower").

Third, even if a misrepresentation is found to exist, summary judgment is nonetheless appropriate because Dr. Arizpe could not have reasonably or justifiably relied on it.  Under Texas law, one cannot reasonably rely on a statement of another where such statement says it is not binding.[59]  This rule derives from the proposition that one's own contributory negligence destroys reasonable reliance.[60]  Here, the Illustration repeatedly states that the applicable provisions may vary in some states and that the as-issued policy's provisions will control.[61]  As the Texas Supreme Court recently recognized, a party cannot justifiably rely on statements that were (1) contrary to the provisions of the parties' contract and (2) were called into question by "red flags" during the negotiations.[62]  Since Dr. Arizpe possessed the Illustration, with these admonitions, at the time he applied for coverage and knew, through his receipt of the Policy, that the terms of the Catastrophic Disability Table were not in such agreement, his reliance was not reasonable, and his misrepresentation-based claims fail as a matter of law.[63]

Independent of the foregoing, Dr. Arizpe's alleged reliance was unreasonable because he did not avail himself of the "free look" period in the Policy.  As one court has observed: "Equity aids those who are vigilant in the assertion of their rights, but does not stand at the beck and call

---

[59] See Zavala Land & Water Co. v. Tolbert, 165 S.W. 28, 33-34 (Tex. Civ. App.--Dallas 1914, no writ); see also Miller v. Allstate Texas Lloyd's, No. H-17-1684, 2017 WL 3335997, at *6 (S.D. Tex. Aug. 4, 2017) (observing that "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law"); Jeffries v. Pat A. Madison, Inc., 269 S.W.3d 689, 692 (Tex. App.--Eastland 2008, no pet.) (holding that a potentially actionable misrepresentation was barred where the policy, the application, and the plan brochure all put the plaintiff on notice of its falsity).

[60] See Continental Cas. Co. v. Bock, 340 S.W.2d 527, 532-33 (Tex. Civ. App.--Houston 1960, writ ref'd n.r.e.) ("Ordinarily an insured cannot purchase, receive and retain a written policy of insurance and then be permitted to say that he did not read it or know its contents and provisions, unless the insurer did something to induce the insured not to read the policy.").

[61] App 108-109, 111.

[62] JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C., 546 S.W.3d 648, 658-60 (Tex. 2018).

[63] See id. at 660.  Indeed, in Orca Assets, the plaintiff had abandoned its breach of contract claim, as the contract's terms were fatal to its arguments, and the supreme court reinstated the trial court's summary judgment on the plaintiff's fraud and negligent misrepresentation claims due to the lack, as a matter of law, of justifiable reliance.  Id. at 653, 660.

of those who merely change their minds as to the wisdom of completed business transactions."[64] The time to address any inconsistencies between the Illustration and the Policy was during the "free look" period, and any reliance beyond the return of the initial premium was unfounded.[65]

**F.    Dr. Arizpe's statutory claims are meritless.**

The same analysis is fatal to Dr. Arizpe's statutory claims.  To prevail on these claims, Dr. Arizpe must establish that Principal Life violated a provision in either the Texas Insurance Code or the DTPA's "laundry list" of specifically prohibited acts.[66]  Dr. Arizpe alleges that Principal Life violated these statutes by (1) representing that the Policy had characteristics or benefits it did not have, (2) representing that the Policy conferred or involved rights, remedies, or obligations it did not have, (3) failing to disclose information in order to induce Dr. Arizpe into purchasing the Policy, (4) engaging in an unconscionable course of action, (5) making untrue statements of material fact regarding the Policy's terms, and (6) making, issuing, or circulating an estimate, illustration, etc. that misrepresented the terms of the Policy.[67]  Dr. Arizpe must show that Principal Life's misrepresentations were the producing cause of his injuries[68] and that he relied on such misrepresentations to his detriment.[69]

As detailed above, all of Dr. Arizpe's misrepresentation-based statutory claims fail because (1) the Illustration states that it is not the policy, that the policy, when issued, will control, that policy provisions may vary in some states, and that Dr. Arizpe should review the Policy for the applicable terms, (2) Dr. Arizpe's receipt of the Policy in 2011 put him on notice

---

[64] *Franklin Life Ins. Co. v. Faggard,* 296 S.W.2d 335, 339 (Tex. Civ. App.--San Antonio 1956, writ ref'd n.r.e.).

[65] *See Brown v. Royal Maccabees Life Ins. Co.*, 137 F.3d 1236, 1249 (10th Cir. 1998) (observing that an insured has a duty to read his policy and can return it if it is unsatisfactory).

[66] *See* Tex. Ins. Code §§ 541.051-.061; Tex. Bus. & Com. Code § 17.46.

[67] Document 25 (Second Amended Complaint), ¶ 67.

[68] Tex. Bus. & Com. Code § 17.50(a); *see also Alexander v. Turtur & Associates, Inc.*, 146 S.W.3d 113, 117 (Tex. 2004).

[69] Tex. Bus. & Com. Code § 17.50(a)(1)(B); Tex. Ins. Code § 541.151(2).

of the falsity of any alleged misrepresentations, and (3) Dr. Arizpe could not have relied on any alleged statements that were contrary to the Policy's terms.[70]

Although Dr. Arizpe's statutory claims appear to be misrepresentation-based, to the extent they are based on Principal Life's denial of his claims for the Disputed Claims, such statutory claims fail because, as set forth herein, Principal Life had a reasonable basis for its determinations and did not breach the Policy, which is a prerequisite to recovery for statutory violations.[71]

**G.     Principal Life did not commit bad faith.**

The foregoing analysis also warrants the entry of summary judgment on Dr. Arizpe's claim for breach of the duty of good faith and fair dealing.  Under the traditional formulation of this claim under Texas common law, Dr. Arizpe must establish that Principal Life knew or should have known it was reasonably clear that his claim was covered.[72]  An insurer does not breach its duty of good faith merely by erroneously denying a claim,[73] and if an insurer has a reasonable basis for denying payment, it cannot be guilty of bad faith as a matter of law.[74]

---

[70] *See Khoei*, 2014 WL 585399, at *7 (dismissing the plaintiffs' statutory claims where they "had the facts needed to seek a judicial remedy when they received the policy certificate"); *E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d 311, 322 (Tex. App.--Beaumont 2004, no pet.) (rejecting the plaintiff's statutory claims where it was "on notice that the policy's accumulation value could decrease based upon investment experience").

[71] *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (observing that, "[w]hen the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive"); *Khoei*, 2014 WL 585399, at *6 ("Because the breach of contract claim fails, the extracontractual claims for breach of the duty of good faith and fair dealing and claims under the Texas Insurance Code fail as well.").

[72] *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997); *see also Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 196 (Tex. 1998) (observing that bad faith focuses not on the validity of a claim, but on the reasonableness of the insurer's conduct in rejecting it).

[73] *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 269 (Tex. 1997).

[74] *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 601 (Tex. 1993); *see also Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (holding that the insurer had a reasonable basis to dispute the validity of the insured's claim and thus did not act in bad faith as a matter of law); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.").

Here, however, Dr. Arizpe does not allege that Principal Life denied his claim for the Disputed Benefits in bad faith; instead, he contends that Principal Life committed bad faith by not including the terms of the Catastrophic Disability Table in the Policy.[75]  Under Texas law, however, an insurer does not commit bad faith by omitting terms from the as-issued policy. Moreover, even if the Court ultimately determines that the terms of the Catastrophic Disability Table should have been included in the Catastrophic Disability Benefit Rider and the Capital Sum Benefit Rider, which is a finding it should not make, the admonitions in the Illustration, which stated it is not the policy, that the policy, when issued, will control, that policy provisions may vary in some states, and that Dr. Arizpe should review the Policy for the applicable terms, gave Principal Life reasonable grounds for its omission of such table and establish that it did not act in bad faith.

**H.**    <u>**Principal Life did not commit fraud**</u>.

The Court should also enter summary judgment on Dr. Arizpe's fraud claim.[76]  To prevail on this claim, Dr. Arizpe must prove that (1) Principal Life made a false representation as to a past or existing fact, (2) which was material to the transaction, (3) Principal Life knew the representation to be false, (4) and made the representation for the purpose of inducing Dr. Arizpe to take certain action, (5) Dr. Arizpe reasonably relied upon the representation, (6) to his detriment.[77]

This claim, which requires a showing of knowing misconduct, fails for several reasons. For example, as confirmed by the admonitions in the Illustration and the subsequent issuance and

---

[75] Document 25 (Second Amended Complaint), ¶¶ 58-60.

[76] *Id.*, ¶¶ 72-75.

[77] *See Kansa Reinsurance Co. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362, 1375 (5th Cir. 1994); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991).

delivery of the Policy to Dr. Arizpe, Principal Life did not make a false representation.[78] Numerous courts have recognized that a party cannot complain of alleged misrepresentations that were contrary to the terms of an agreement he freely entered into.[79]  Since Dr. Arizpe could have discovered the falsity of any alleged misrepresentations by reading the Policy, his fraud claim fails as a matter of law.

In turn, although Dr. Arizpe alleges in the Second Amended Complaint that he relied on the Catastrophic Disability Table in purchasing the Policy,[80] such alleged reliance was not reasonable.  As one court observed: "[A] party to a contract may not successfully claim that he believed the provisions of the contract were different from those plainly set out in the contract or that he did not understand the meaning of the language used."[81]  Here, the Policy (1) does not include the terms in the Catastrophic Disability Table on which Dr. Arizpe allegedly relied and (2) expressly provides that its terms cannot be orally modified by an agent, thus putting Dr. Arizpe on notice that he could not rely on any statements in the Illustration or from Wyse that

---

[78] *See Kreit v. St. Paul Fire & Marine Ins. Co.*, No. H-04-1600, 2006 WL 322587, at *3 (S.D. Tex. Feb. 10, 2006) ("Regardless of what, if anything, [the insurer's] representatives may or may not have told [the insured] about the nature of the Policy when he purchased it, the Policy itself plainly states that [the insurer] had the right to settle claims against [the insured] as [the insurer] deemed appropriate."); *see also Hunton*, 243 F. Supp. 2d at 700 n.21 (observing that "it is clear from the terms of the Policy that Plaintiffs remain responsible for premium payments for life unless and until there is adequate dividend performance").

[79] *See Pankow v. Colonial Life Ins. Co. of Texas*, 932 S.W.2d 271, 277 (Tex. App.--Amarillo 1996, writ denied) (finding that alleged misrepresentations by an agent that were contrary to the policy's terms were not actionable where the insureds were charged, as a matter of law, with knowledge of those restrictions); *see also Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 484-85 (S.D. Tex. 1994) (holding that breach of contract, misrepresentation, statutory, and bad faith claims all failed where the policy was contrary to the alleged misrepresentations), *aff'd*, 66 F.3d 319 (5th Cir. 1995).

[80] Document 25 (Second Amended Complaint), ¶¶ 24, 68-69, 75.

[81] *E.R. Dupuis Concrete Co.*, 137 S.W.3d at 317; *see also Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 409 (5th Cir. 1998) ("The investor who seeks to blame his investment loss on fraud or misrepresentation must himself exercise due diligence to learn the nature of his investment and the associated risks.").

were contrary to the Policy's terms.[82]

Independent of the foregoing, Dr. Arizpe's fraud claim is barred by his retention of the Policy. Instead of returning the Policy during the "free look" period, Dr. Arizpe ratified any alleged misconduct by keeping the Policy in force and continuing to enjoy the benefits it affords. Texas courts have recognized that a party who has allegedly been defrauded into entering into a contract cannot complain when he allows that contract to remain in force,[83] and that analysis is especially appropriate here, as Principal Life had now paid or provided benefits to Dr. Arizpe worth over $450,000.00 under a contract--the Policy--that he now contends Principal Life fraudulently convinced him to purchase.

## I.     Principal Life is not responsible for Wyse's alleged misrepresentations.

Moreover, Principal Life is not responsible for Wyse's alleged conduct. At the time they retained Wyse, Plaintiffs knew that he was affiliated with multiple insurance companies, and over time, he sold them policies issued by several different insurers (including Minnesota Life and Banner Life).[84] Dr. Arizpe's purchase of the Policy was a competitive product situation, as Wyse gave him proposals from not only Principal Life, but also MetLife and Mutual of Omaha.[85] Although Chapter 4001 of the Texas Insurance Code, which is entitled "Agent Licensing in General," adopts a functional approach in determining whether an individual is the agent of the insurer, section 4001.051(b) creates an agency relationship only "for the purposes of

---

[82] *See E.R. Dupuis Concrete Co.*, 137 S.W.3d at 321 ("As a matter of law, [the plaintiff] could not rely upon representations that the policy warned were not authorized"); *see also Hunton*, 243 F. Supp. 2d at 701 n.24 (finding that the plaintiffs' reliance on the agent's statements was unreasonable where it was contrary to the terms of the policy and application); *Casassa v. Liberty Life Ins. Co.*, 949 F. Supp. 825, 829 (M.D. Ala. 1996) (observing that a reasonable person is put on notice of fraud upon reading a life insurance policy that conflicts with prior representations).

[83] *See Ribble v. Roberts,* 180 S.W. 620, 621 (Tex. Civ. App.--Austin 1915, no writ) (noting that, even where there is sufficient proof of fraud to avoid a policy, an insured's claims are nonetheless barred where he retains the policy).

[84] App. 243, 245, 256, 272.

[85] App. 035.

the liabilities, duties, requirements, and penalties" of the listed statutes,[86] and it does not purport to create an agency relationship for other claims (such as common-law fraud).[87]   Moreover, under Texas law, "an insurance agent can act as an agent for both the insured and the insurer."[88] Even when an insurance agent has the authority to accept applications, collect initial premiums, and deliver policies, he can also act as an agent of the purchaser for the procurement of the insurance and for other investment purposes that do not conflict with the insurance agency.[89]   So, Principal Life is not liable for any unauthorized misrepresentations that Wyse may have made.

**J.      Dr. Arizpe cannot recover future benefits at trial.**

In the Second Amended Complaint, Plaintiffs seek to recover the Capital Sum Benefit, which calls for a one-time lump-sum payment of $179,520.00, past and future benefits under the Presumptive Disability Benefits Rider, which are (as noted above) duplicative of the Disability Benefits that he is already receiving, and past and future benefits under the Catastrophic Disability Benefit Rider, which start at $8,000.00 per month.   Under Texas law, however, Dr. Arizpe cannot recover future Presumptive Disability Benefits and Catastrophic Disability Benefits in a lump-sum at trial, as Principal Life has not repudiated the Policy, which is a prerequisite to the recovery of future benefits.[90] Here, Principal Life has not sought to rescind or otherwise repudiated the Policy; instead, it has merely denied disputed claims based on the

---

[86] Tex. Ins. Code § 4001.051(b).

[87] *See Westview Drive Investments, LLC v. Landmark American Ins. Co.*, 522 S.W.3d 583, 604 (Tex. App.--Houston [14th Dist.] 2017, pet. denied).

[88] *McKillip v. Employers Fire Ins. Co.*, 932 S.W.2d 268, 270 (Tex. App.--Texarkana 1996, no writ); *see also Hunt v. State*, 737 S.W.2d 4, 5 n.1 (Tex. App.--Corpus Christi 1987, no writ) (observing that "an insurance agent acts for the insured in making application for insurance and in processing the policy, and acts for the insurer in delivering the policy and in collecting and remitting the premium").

[89] *See Merbitz v. Great Nat'l Life Ins. Co.*, 599 S.W.2d 655, 658 (Tex. Civ. App.--Texarkana 1980, writ ref'd n.r.e.); *see also Maintain, Inc. v. Maxson-Mahoney-Turner, Inc.*, 698 S.W.2d 469, 472 (Tex. App.--Corpus Christi 1985, writ ref'd n.r.e.).

[90] *See Lumbermans Mut. Cas. Co. v. Klotz*, 251 F.2d 499, 504 (5th Cir. 1958) ("To precipitate anticipatory breach, there must be a complete renunciation of the contract, a categorical claim that it never has been, or no longer is, valid and binding whatsoever.").

Policy's terms, and it is continuing to this day to pay Disability Benefits and waive the premiums for the Policy.[91]   Since Dr. Arizpe can at most receive the past-due benefits that have accrued through the date of trial,[92] the Court should enter summary judgment that he cannot recover future benefits at trial.

## K.   Rebekah lacks standing to assert claims against Principal Life.

Finally, summary judgment is appropriate on all of Rebekah's claims due to her lack of standing.  The only parties to the Policy are Dr. Arizpe and Principal Life.[93]   Rebekah is neither the owner of nor the insured under the Policy, and she is not mentioned anywhere within its four corners.   Even though Texas law recognizes that a non-party may have standing in certain circumstances to sue for breach of contract, to establish its standing, the third party must demonstrate that "(1) it was not privy to the written agreement; (2) the contract was actually made for its benefit; and (3) the contracting parties intended for it to benefit by their agreement."[94]   Courts should not create third-party beneficiary status by implication, and any doubts are resolved against conferring that status.[95]   Here, the record is bereft of evidence establishing these elements.   Rebekah also lacks standing to assert her statutory and tort claims, as she is not a "consumer" under the DTPA or a "person" under the Texas Insurance Code, and

---

[91] *See Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 638 (1935) ("Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy.").

[92] *See Aetna Life Ins. Co. v. Swain*, 148 S.W.2d 921, 923 (Tex. Civ. App.--Galveston 1941, no writ) (observing that "a refusal of the appellant to pay the first, or any succeeding installment, even if indisputably made, did not authorize the acceleration of the other payments, and permit recovery of them all at once in a lump sum").

[93] App. 124 ("This policy is a legal contract between the Owner [i.e., Dr. Arizpe] and Us [i.e., Principal Life].").

[94] *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 113 F. Supp. 3d 924, 936 (W.D. Tex. 2015), *aff'd*, 840 F.3d 205 (5th Cir. 2016).

[95] 113 F. Supp. 3d at 936-37.

Principal Life did not owe her any duties that it breached that caused her damage.[96]

### III.  <u>CONCLUSION</u>

Principal Life respectfully requests that the Court enter summary judgment in its favor on all of Plaintiffs' claims, which should be dismissed with prejudice.

Respectfully submitted,

By:      /s/ Andrew C. Whitaker
          Andrew C. Whitaker
          State Bar No. 21273600
          andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANT
PRINCIPAL LIFE INSURANCE COMPANY

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 30, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:  Mr. Evan Lane (Van) Shaw, Mr. David J. Welch, and Mr. Jeremy B. (Beau) Powell, Law Offices of Van Shaw, 2723 Fairmount, Dallas, Texas 75201.

/s/ Andrew C. Whitaker
Andrew C. Whitaker

---

[96] *See White v. Provident Life & Acc. Ins. Co.*, No. A-96-CA-639 SS, Slip Op. at 1-6 (W.D. Tex. Nov. 15, 1996) (holding that spouses lacked standing to assert breach of contract and statutory claims arising out of disability policies that the defendant insurer issued to their husbands).  A true and correct copy of this opinion is attached hereto as Exhibit A.

<u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u> – Page 24