IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. NICHOLAS ARIZPE and | § | |
| REBEKAH ARIZPE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. No. 3:18-cv-01010-G |
| | § | |
| PRINCIPAL LIFE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE
PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE**

Andrew C. Whitaker
State Bar No. 21273600
andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANT
PRINCIPAL LIFE INSURANCE COMPANY

# TABLE OF CONTENTS

I. NATURE OF THE ACTION ................................................................................................1

II. PROCEDURAL HISTORY ...............................................................................................2

    A.    Principal Life files the Motion and supporting documents ...........................................2

    B.    Plaintiffs file the Response and Plaintiffs' Appendix ..................................................2

III. ATTACHMENTS TO THESE OBJECTIONS ..................................................................3

IV. ARGUMENT......................................................................................................................3

    A.    Standards for summary judgment evidence.................................................................3

    B.    Numerous statements in the Arizpe Declaration
        should be stricken or disregarded ...........................................................................5

    C.    Numerous statements in the Rhinehart Declaration
        should be stricken or disregarded ...........................................................................7

    D.    Numerous statements in the Maher Declaration
        should be stricken or disregarded .........................................................................11

    E.    Two of the exhibits to the Powell Declaration
        should be stricken or disregarded .........................................................................14

    F.    The Court should consider the errata page to
        Wyse's deposition.................................................................................................15

V. CONCLUSION.................................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Campbell v. Metropolitan Life Ins. Co.*,
  812 F. Supp. 1173 (E.D. Okla. 1992) ......................................................3

*Cormier v. Pennzoil Exploration & Prod. Co.*,
  969 F.2d 1559 (5th Cir. 1992) ...............................................................4

*Doe v. Dallas Ind. School Dist.*,
  220 F.3d 380 (5th Cir. 2000) ................................................................4

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996) ................................................................3

*Galindo v. Precision American Corp.*,
  754 F.2d 1212 (5th Cir. 1985) ..............................................................3

*Hibernia Nat'l Bank v. Carner*,
  997 F.2d 94 (5th Cir. 1993) ................................................................14

*Highland Capital Management, L.P. v. Bank of America, N.A.*,
  No. 3:10-cv-1632-L, 2013 WL 4502789 (N.D. Tex. Aug. 23, 2013), *aff'd*, 574
  F. App'x 486 (5th Cir. 2014) ......................................................4, 11, 14

*Hugh Symons Group, plc v. Motorola, Inc.*,
  292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002) .............................4

*In re Hinsley*,
  201 F.3d 638 (5th Cir. 2000) ................................................................4

*Iacangelo v. Georgetown Univ.*,
  272 F.R.D. 233 (D.D.C. 2011).............................................................11

*Lechuga v. Southern Pacific Transp. Co.*,
  949 F.2d 790 (5th Cir. 1992) ................................................................3

*Marshall v. East Carroll Parish Hosp. Service Dist.*,
  134 F.3d 319 (5th Cir. 1998) ................................................................3

*Melton v. Texas Ins. & Annuity Ass'n of America*,
  114 F.3d 557 (5th Cir. 1997) ...............................................................14

*Provident Life & Accident Ins. Co. v. Goel*,
  274 F.3d 984 (5th Cir. 2001) ................................................................4

*Railroad Management Co. v. CFS Louisiana Midstream Co.*,
   428 F.3d 214 (5th Cir. 2005) ............................................................5

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
   72 F.3d 489 (5th Cir. 1996) ..............................................................4

*Salgado v. General Motors Corp.*,
   150 F.3d 735 (7th Cir. 1998) ............................................................5

*Smith v. Palafox*,
   728 F. App'x 270 (5th Cir. 2018) .............................................11, 14

*Topalian v. Ehrman*,
   954 F.2d 1125 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992)...................3

*Turman v. Colonial Life & Acc. Ins. Co.*,
   No. 3:06CV125-B-A, 2008 WL 352490 (N.D. Miss. Feb. 7, 2008) ...................13

*U.S. v. $92,203.00 in U.S. Currency*,
   537 F.3d 504 (5th Cir. 2008) ............................................................3

*Valleza v. City of Laredo, Texas*,
   331 F. Supp. 2d 579 (S.D. Tex. 2004) ................................................4

*Waggoner v. City of Garland, Texas*,
   987 F.2d 1160 (5th Cir. 1993) .........................................................15

**Rules**

Fed. R. Civ. P. 26..............................................................................11

Fed. R. Civ. P. 26(a) ..........................................................................5

Fed. R. Civ. P. 26(a)(2)(B) ..................................................................5

Fed. R. Civ. P. 37(c)(1).....................................................................4, 5

Fed. R. Civ. P. 56.............................................................................3, 4

Fed. R. Civ. P. 56(c)(4)......................................................................3, 4

Fed. R. Evid. 1002 ............................................................................5

Defendant Principal Life Insurance Company ("Principal Life") files its objections to and motion to strike selected evidence in the appendix ("Plaintiffs' Appendix") (Document 34) that Plaintiffs Dr. Nicholas Arizpe ("Dr. Arizpe") and Rebekah Arizpe ("Rebekah") (collectively, "Plaintiffs") have filed in support of Plaintiffs' Response to Defendant's Motion for Summary Judgment and Brief in Support (the "Response") (Document 33) and states[1]:

## I.  NATURE OF THE ACTION

This action arises out of Principal Life's denial of Dr. Arizpe's claims for payment of the Disputed Benefits.  In September 2016, Dr. Arizpe suffered a seizure, and he submitted a claim to Principal Life for various benefits under the Policy.  Principal Life has now provided Dr. Arizpe with over $450,000.00 in benefits, but it has declined to pay the Disputed Benefits based upon its determination that he did not satisfy the terms of the riders at issue, each of which required that he suffer the "total loss of use for any and every purpose or activity without any possibility of recovery" of certain enumerated body parts or functions.

Unable to convincingly articulate how Dr. Arizpe satisfies the terms of those riders, Plaintiffs contend that the terms of some of those riders should be modified by the Illustration.  In so arguing, however, Plaintiffs conveniently ignore that (1) the Illustration repeatedly provides that the terms of the Policy control, meaning that the Illustration did not contain a misrepresentation and that any alleged reliance on it was unreasonable as a matter of law, and (2) Dr. Arizpe received the Policy six years before the onset of his claim and thus had actual knowledge that the Illustration's provisions were not in or part of the Policy.

---

[1] Unless otherwise indicated, defined terms in Defendant's Motion for Summary Judgment (the "Motion") (Document 26) and the Brief in Support of Defendant's Motion for Summary Judgment ("Principal Life's Brief") (Document 27) will be given their same meanings herein, all references to "App." are to the pages in the Appendix (Document 28), all references to "Rules" are to the Federal Rules of Civil Procedure, and all emphases are supplied by counsel.

**DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE**
**PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE** – Page 1

## II. PROCEDURAL HISTORY

### A.    Principal Life files the Motion and supporting documents.

On November 30, 2018, Principal Life filed the Motion, in which it sought summary judgment on all of Plaintiffs' claims.  In support of the Motion, Principal Life filed the Appendix, which included the Declaration of Mike Wallace, excerpts and selected exhibits from Plaintiffs' depositions, Plaintiffs' responses to Principal Life's requests for admissions, and declarations (with selected attachments) from two third-party records custodians.  Plaintiffs have not asserted any objections to any of the evidence in the Appendix.

### B.    Plaintiffs file the Response and Plaintiffs' Appendix.

On December 21, 2018, Plaintiffs filed the Response and Plaintiffs' Appendix, which included (1) the Declaration of Dr. Nicholas Arizpe, M.D. (the "Arizpe Declaration"),[2] (2) excerpts from Rebekah's deposition,[3] (3) the Declaration of J. Beau Powell (the "Powell Declaration"),[4] (4) excerpts from Wyse's deposition,[5] (5) the Declaration of Jerry Rhinehart (the "Rhinehart Declaration"),[6] and (6) the Declaration of Dr. Elizabeth Maher, M.D., Ph.D. (the "Maher Declaration").[7]

Based on the applicable authorities, the Arizpe Declaration, the Rhinehart Declaration, the Maher Declaration, and the Powell Declaration do not satisfy the standards for summary judgment evidence and should be stricken or disregarded as set forth below.  Moreover, the Court should consider the recently submitted errata pages from Wyse's deposition, which clarify his testimony

---

[2] Document 34 (Plaintiffs' Appendix) at PLTF APX 1-4.
[3] Id. at PLTF APX 5-19.
[4] Id. at PLTF APX 20-106.
[5] Id. at PLTF APX 107-115.  Wyse was the broker who assisted Dr. Arizpe in applying for the Policy.
[6] Id. at PLTF APX 116-139.  Plaintiffs have designated Jerry Rhinehart ("Rhinehart") as an expert and provided a report from him.  Principal Life deposed Rhinehart on December 19, 2018.
[7] Id. at PLTF APX 140-152.  Plaintiffs have designated Elizabeth Maher, M.D., Ph.D. ("Dr. Maher") as an expert and have provided a report from her.  Principal Life deposed Dr. Maher on December 21, 2018.

that, notwithstanding Plaintiffs' arguments to the contrary, he may well have been involved in the delivery of the Policy to Dr. Arizpe.

## III.  ATTACHMENTS TO THESE OBJECTIONS

In support of these objections, Principal Life has attached hereto true and correct copies of excerpts from the depositions of Dr. Arizpe (Exhibit A), Jerry Rhinehart (Exhibit B), and Dr. Maher (Exhibit C).  Principal Life has also attached the errata pages it received yesterday from Wyse's deposition (Exhibit D).

## IV.  ARGUMENT

### A.    Standards for summary judgment evidence.

Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[8]  As the Fifth Circuit has observed, "mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment."[9]  Similarly, those portions of a declaration setting forth legal conclusions must be stricken,[10] and self-serving and unsupported

---

[8] Fed. R. Civ. P. 56(c)(4); *see also U.S. v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008).

[9] *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992)); *see also Marshall v. East Carroll Parish Hosp. Service Dist.*, 134 F.3d 319, 324 (5th Cir. 1998) (concluding that the "conclusory, unsupported statements" in an affidavit were insufficient to create a fact issue); *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992) (finding that "conclusory and unspecific" allegations in an affidavit did not raise a fact issue).

[10] *See Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985) (observing that "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment"); *Campbell v. Metropolitan Life Ins. Co.*, 812 F. Supp. 1173, 1174 (E.D. Okla. 1992) (stating that an affidavit "containing only conclusions of law, unsupported by factual allegations, is insufficient to establish the existence of a triable issue").

statements do not defeat summary judgment when the record evidence is to the contrary.[11] Finally, since Rule 56(c)(4) requires that declarations "set forth facts that would be admissible in evidence," declarations that are based upon inadmissible evidence, such as speculation or hearsay, are not entitled to any weight.[12]

In addition, a party cannot manufacture a genuine issue of material fact by submitting a declaration that impeaches the declarant's prior testimony without explanation.[13]  Where a witness's deposition testimony conflicts with his subsequent affidavit, "it is the deposition testimony, and not the affidavit, which is given credence."[14]

Finally, unsworn expert reports do not qualify as admissible evidence under Rule 56,[15] and an expert cannot overcome this deficiency by submitting a declaration merely stating that a true and correct copy of his report is attached to his declaration.[16]  Moreover, Rule 26(a)(2)(B) requires that the report of a retained expert include "a complete statement of all opinions the witness will express, and Rule 37(c)(1) provides for the automatic exclusion of any information, whether on a

---

[11] *See In re Hinsley,* 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.").

[12] *See Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.) (noting that unsupported speculation is not competent summary judgment evidence), *cert. denied*, 537 U.S. 950 (2002); *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (observing that a court may not consider hearsay evidence in affidavits).

[13] *See Doe v. Dallas Ind. School Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment that impeaches, without explanation, sworn testimony.").

[14] *Valleza v. City of Laredo, Texas*, 331 F. Supp. 2d 579, 582-83 (S.D. Tex. 2004).

[15] *See Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 1000 (5th Cir. 2001) ("Unsworn expert reports ... do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment.").

[16] *See Highland Capital Management, L.P. v. Bank of America, N.A.*, No. 3:10-cv-1632-L, 2013 WL 4502789, at *6 (N.D. Tex. Aug. 23, 2013) (excluding an expert report that was not sworn or made under penalty of perjury, even though the expert submitted a declaration stating that the attached copy of her report was a true and correct copy of the original), *aff'd*, 574 F. App'x 486 (5th Cir. 2014).

**DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE**
**PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE – Page 4**

motion or at trial, that was not properly disclosed under Rule 26(a).[17]   As such, it is improper for an expert to offer declaration testimony that goes beyond the matters addressed in his report.

**B.**   **Numerous statements in the Arizpe Declaration should be stricken or disregarded.**

Application of these standards confirms that numerous assertions in the Arizpe Declaration should be stricken or disregarded.   For example, the following statements in the Arizpe Declaration[18] constitute impermissible speculation regarding either Rebekah, who has not submitted a declaration, or what might have happened if Dr. Arizpe had met with Wyse to review the Policy:

- "Shortly after I began practicing medicine as an anesthesiologist, *my wife, Rebekah Arizpe ("Becky"), and I decided* to look into purchasing a disability income insurance policy to ensure that Becky and our children would be protected in the event something happened in the future that would prevent me from practicing medicine." (Arizpe Declaration, ¶ 3);

- "Based on the Illustration and representations from Wyse regarding the same, *Becky and I decided* to purchase the disability income insurance policy from Principal." (*id.*, ¶ 9);

- "*Becky and I believed* the disability income insurance policy offered by Principal would offer the most benefits and it appeared to have the least-restrictive requirements to obtain benefits."[19]  (*id.*, ¶ 9.a.);

- "The fact that the disability income insurance policy offered by Principal purported to provide catastrophic disability benefit coverage based on activities of daily living ('ADLs') was the main reason *we chose* to purchase a disability income insurance policy from Principal." (*id.*, ¶ 9.b.);

- "*After Becky and I decided* to purchase the disability income insurance policy offered by Principal, I worked with Wyse to complete Principal's application for a disability income insurance policy (the 'Application')." (*id.*, ¶ 10); and

- "*If I reviewed the Policy* with Wyse after the Policy was issued and discovered that

---

[17] Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1); *see also Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (observing that "the sanction of exclusion is automatic and mandatory" unless the sanctioned party can show that the violation was either justified or harmless).
[18] Document 34 (Plaintiffs' Appendix) at PLTF APX 1-4.
[19] The "best evidence rule," which is embodied in Fed. R. Evid. 1002, prevents a witness from testifying as to the contents of a document or writing.  Fed. R. Evid. 1002; *see also Railroad Management Co. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 217-18 (5th Cir. 2005).

the Policy was not consistent with the Illustration, *I would have returned the Policy* to Principal."[20]  (*id.*, ¶ 14.a.).

In turn, the following statements in the Arizpe Declaration constitute hearsay for which no exception applies:

- "*I told Wyse* I wanted the most comprehensive disability coverage that I could purchase; specifically, *I told Wyse* I wanted all available coverage that I could get." (Arizpe Declaration, ¶ 4.a.);

- "*Wyse told me* that the illustration was representative of the coverage I would be provided from Principal should I purchase a Principal disability income insurance policy."  (*id.*, ¶ 8);

- "*Based on representations by Wyse*, I believed that the disability income insurance coverage for which I was applying was as shown on the Illustration.  Specifically, *Wyse told me* that the catastrophic disability benefit would be based on ADLs."[21]  (*id.*, ¶ 11.a.); and

- "Since filing the above-styled lawsuit, *I have since learned* that Principal maintains that issuing a policy with Catastrophic Disability Benefits based on ADLs are a 'prohibited practice' in Texas."  (*id.*, ¶ 18.a.).

All of these statements should be stricken or disregarded.

Other statements in the Arizpe Declaration should be stricken or disregarded because they are contradicted, without explanation, by his prior deposition testimony.  For example, in his declaration, Dr. Arizpe asserts that "I made sure that Wyse included the Illustration as an attachment to the Application."[22]  At his deposition, however, Dr. Arizpe testified that he did not know whether the Illustration was attached and asked, "Why would I know?"[23]  Dr. Arizpe also admitted that he did not know how the Application was submitted to Principal Life or whether the

---

[20] As detailed in Principal Life's summary judgment briefing, Dr. Arizpe indisputably received the Policy by no later than October 31, 2011, and nothing prevented him from contacting either Wyse or Principal Life with any questions he had regarding the Policy or any of its provisions.

[21] In addition, this assertion should be disregarded because it is flatly contradicted by the Policy, which states that only Principal Life's "corporate officers may modify or waive anything in, or approve changes to, the [P]olicy," and that "[n]o one else, including the agent or broker, has the authority to change the [P]olicy or waive any provision."  Document 28 (Appendix) at App. 145.

[22] Document 34 (Plaintiffs' Appendix) at PLTF APX 2 at ¶ 11.

[23] Exhibit A (Arizpe Deposition) at 63:1-9, 383:17-21.

**DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE**
**PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE – Page 6**

Illustration was actually attached to the Application at the time of its submission.[24]

Dr. Arizpe also asserts in his declaration that "Principal never contacted me and told me that the Illustration was removed from the Application."[25]  Of course, as noted above, Dr. Arizpe did not know whether the Illustration was attached to the Application.  Moreover, Dr. Arizpe admitted at his deposition that, by no later than October 31, 2011, he received the original of the Policy, which gave him actual notice that Principal Life had not attached a copy of the Illustration to the Application (which *was* attached to the Policy).[26]

## C. Numerous statements in the Rhinehart Declaration should be stricken or disregarded.

Many of the statements in the Rhinehart Declaration[27] are objectionable as well.  For example, the following statements in the Rhinehart Declaration constitute impermissible speculation or conjecture:

- "Principal *should have* notified the agent Erik Wyse or Dr. Arizpe that the Illustration was removed from the Application."  (Rhinehart Declaration, ¶ 8.d.);

- "Principal *should have* notified the insurance agent Erik Wyse or Dr. Arizpe that the benefits shown on the Illustration were not the same as the benefits provided for by the Policy."  (*id.*, ¶ 8.e.);

- "When Principal issued the Policy, the Policy *should have* been sent to the insurance agent Erik Wyse to allow Wyse to review the Policy with Dr. Arizpe."  (*id.*, ¶ 8.f.); and

- "Based on my review of the November 13, 2018 letter from Dr. Elizabeth A. Maher, MD, PhD, *and assuming* Dr. Maher will testify that Dr. Arizpe's loss of use of Dr. Arizpe's right hand and right foot is 'total,' Principal *should pay* the Catastrophic Disability Coverage to Dr. Arizpe."  (*id.*, ¶ 8.k.).

The following statements in the Rhinehart Declaration constitute impermissible conclusions or legal conclusions:

---

[24] *Id.* at 382:23-383:4.
[25] Document 34 (Plaintiffs' Appendix) at PLTF APX 2 at ¶ 12.
[26] Exhibit A (Arizpe Deposition) at 96:1-21, 384:21-385:2.
[27] Document 34 (Plaintiffs' Appendix) at PLTF APX 116-139.

DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE
PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE – Page 7

- "Principal *should have* notified the agent Erik Wyse or Dr. Arizpe that the Illustration was removed from the Application." (Rhinehart Declaration, ¶ 8.d.);

- "Principal *should have* notified the insurance agent Erik Wyse or Dr. Arizpe that the benefits shown on the Illustration were not the same as the benefits provided for by the Policy." (*id.*, ¶ 8.e.);

- "When Principal issued the Policy, the Policy *should have* been sent to the insurance agent Erik Wyse to allow Wyse to review the Policy with Dr. Arizpe." (*id.*, ¶ 8.f.);

- "Principal's failure to send the Policy to Erik Wyse for review during the 'free look' period *breached the standard of care* Principal owed to the Arizpes." (*id.*, ¶ 8.g.);

- "Erik Wyse's failure to ensure the Policy was sent to Erik Wyse for review during the 'free look' period was a failure attributable to Principal *as their agent did not perform the duties* owed to the Arizpes to properly review the Policy." (*id.*, ¶ 8.h.);

- "The Policy *should provide* for Catastrophic Disability Benefits based on one of three definitions - Catastrophic Disability (based on ADLs), Cognitively Impaired, or Presumptively Disabled - as provided for in the Illustration and as applied for by Dr. Arizpe." (*id.*, ¶ 8.j.); and

- "Based on my review of the November 13, 2018 letter from Dr. Elizabeth A. Maher, MD, PhD, and assuming Dr. Maher will testify that Dr. Arizpe's loss of use of Dr. Arizpe's right hand and right foot is 'total,' Principal *should pay* the Catastrophic Disability Coverage to Dr. Arizpe." (*id.*, ¶ 8.k.).

The following statement in the Rhinehart Declaration constitutes hearsay for which no exception applies:

- "*It has come to my attention* that Catastrophic Disability Benefits based on Activities of Daily Living ('ADLs') and/or Cognitive Impairment is illegal in Texas - as pointed out in my deposition by counsel for Principal, Andrew Whitaker. As such, the inclusion of Catastrophic Disability Benefits based on ADLs and Cognitive Impairment in the Illustration is deceptive and misleading to persons such as the Arizpes." (Rhinehart Declaration, ¶ 8.b.).

All of these statements should be stricken or disregarded.

Independent of the foregoing, many statements in the Rhinehart Declaration should be stricken or disregarded because they are contradicted, without explanation, by his prior deposition testimony. For example, Rhinehart testified, contrary to the Rhinehart Declaration:

- Insureds and brokers cannot modify the forms of either an application or an

illustration, and insureds, brokers, and claim representatives cannot modify the terms of an insurance policy once it has been issued,[28]

- Rhinehart did not know of a single insurance company that would honor an insured's request to make an illustration part of a policy,[29]

- The terms of the Policy, as issued and delivered to Dr. Arizpe, control, and the Policy includes the Application but not the Illustration, which was not part of the Policy,[30]

- Insurance laws vary from state to state, which is why insurers include admonitions in illustrations stating that provisions may vary from state to state and that insureds should review their policies for the applicable terms,[31]

- At the time of delivery, Dr. Arizpe could have determined that neither the Illustration nor the terms of the Catastrophic Disability Table were included in the Policy,[32]

- If Dr. Arizpe had concerns about Principal Life's failure to attach the Illustration to the Policy or any of the Policy's terms, he could have returned the Policy to Principal Life within 30 days of delivery for a full refund or contacted Principal Life with any questions or concerns,[33]

- Dr. Arizpe's claim for Catastrophic Disability Benefits is governed by the terms of the Catastrophic Disability Benefit Rider in the Policy, which is not modified in any way by the Illustration,[34] and

- Griffith's letter dated November 17, 2016, which referred to ADLs, did not modify the Policy's terms, and Griffith properly relied on the Policy's terms in adjudicating Dr. Arizpe's claims.[35]

In his declaration, Rhinehart does not--because he cannot--offer any explanation regarding why he should be able to vary his deposition testimony, which controls over his unsupported opinions in the Rhinehart Declaration to the contrary.

---

[28] Exhibit B (Rhinehart Deposition) at 99:9-100:24, 136:12-23.
[29] *Id.* at 185:16-19.
[30] *Id.* at 126:18-127:1, 127:21-128:1, 135:18-136:1.
[31] *Id.* at 169:7-25, 194:25-195:5.
[32] *Id.* at 200:25-201:9, 216:17-21.
[33] *Id.* at 128:5-129:6, 130:1-10.
[34] *Id.* at 141:4-10, 209:1-4.
[35] *Id.* at 156:1-10, 162:13-163:12.

Independent of the foregoing, the Rhinehart Declaration should be stricken to the extent it includes opinions on matters that Rhinehart did not address in his report.  In his report, Rhinehart listed the documents that Plaintiffs' counsel presented to him for review.[36]  Following the preparation of his report (which is dated November 26, 2018) and his deposition (which occurred on December 19, 2018), Plaintiffs' counsel apparently provided Rhinehart with *additional* documents, including excerpts from the depositions of Plaintiffs and Wyse and the Illustration.[37]  Rhinehart used those additional documents to offer the following opinions in the Rhinehart Declaration, none of which can be found in his report:

- "It has come to my attention that Catastrophic Disability Benefits based on Activities of Daily Living ('ADLs') and/or Cognitive Impairment is illegal in Texas - as pointed out in my deposition by counsel for Principal, Andrew Whitaker.  As such, the inclusion of Catastrophic Disability Benefits based on ADLs and Cognitive Impairment in the Illustration is deceptive and misleading to persons such as the Arizpes."  (Rhinehart Declaration, ¶ 8.b.);

- "When Principal issued the Policy, the Policy should have been sent to the insurance agent Erik Wyse to allow Wyse to review the Policy with Dr. Arizpe." (*id.*, ¶ 8.f.);

- "Principal's failure to send the Policy to Erik Wyse for review during the 'free look' period breached the standard of care Principal owed to the Arizpes."  (*id.*, ¶ 8.g.);

- "Erik Wyse's failure to ensure the Policy was sent to Erik Wyse for review during the 'free look' period was a failure attributable to Principal as their agent did not perform the duties owed to the Arizpes to properly review the Policy." (*id.*, ¶ 8.h.); and

- "When an insurance agent like Erik Wyse reviews a newly-issued policy with the insured, it allows the insured to avail himself or herself of the opportunity to return the policy to the insurer if the insured is unhappy with the policy." (*id.*, ¶ 8.i.).

Of course, nothing prevented Plaintiffs' counsel from presenting these additional documents to

---

[36] Document 34 (Plaintiffs' Appendix) at PLTF APX 129.
[37] *Id.* at PLTF APX 118.

Rinehart in connection with the preparation of his report,[38] and these new opinions are untimely and should be stricken or disregarded.

Finally, Rinehart's efforts to prove up his report through the Rinehart Declaration fail as a matter of law.  In his declaration, Rinehart asserts that a true and correct copy of his report is attached as Exhibit 9-B to the Rinehart Declaration and is incorporated as if set forth in full.[39] Rinehart's report, however, constitutes inadmissible hearsay, as it is neither sworn nor made under penalty of perjury.[40]  As Judge Lindsay recently recognized, these deficiencies are not overcome by the mere expedient of a subsequent declaration stating that a "true and correct copy" of the expert report is attached.[41]  The Court should thus disregard or strike Exhibit 9-B to the Rinehart Declaration.

**D.    <u>Numerous statements in the Maher Declaration should be stricken or disregarded</u>.**

In addition, many of the statements in the Maher Declaration[42] should be stricken or disregarded.  In her declaration, Dr. Maher offers the following conclusory assertions:

- "Dr. Arizpe has suffered a total loss of use of his right foot and a total loss of use of his right hand."  (Maher Declaration, ¶ 9);

- "Dr. Arizpe, because of his cancer, stroke, treatment side effects, chronic pain syndrome requiring multiple medications, and severe functional limitations, is precluded from practicing medicine." (*id.*, ¶ 10); and

- "I do not believe Dr. Arizpe's conditions described above can be remedied via any reasonable effort; further, we have attempted all reasonable efforts to remedy Dr. Arizpe's conditions described above. Despite all attempts, Dr. Arizpe still suffers from a total loss of use of his right hand and a total loss of use of his right foot." (*id.*, ¶ 10.a.).

---

[38] *See Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) (noting that Rule 26 places the burden of disclosure regarding an expert's opinions "squarely on the party who has retained the expert").

[39] Document 34 (Plaintiffs' Appendix) at PLTF APX 117.

[40] *See Smith v. Palafox*, 728 F. App'x 270, 276 (5th Cir. 2018) (holding that the district court did not err in excluding unsworn expert reports).

[41] *See Highland Capital Management, L.P.*, 2013 WL 4502789, at *6.

[42] Document 34 (Plaintiffs' Appendix) at PLTF APX 140-152.

**DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE**
**<u>PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE</u> – Page 11**

These conclusory statements should be stricken or disregarded because they are directly refuted by Dr. Maher's deposition testimony and other prior statements.  For example, Dr. Maher unambiguously testified that Dr. Arizpe has at least some use of his right arm and hand:

Q.      But he has some use of his right arm and hand; correct?

A.      *Some, yes*.[43]

Dr. Maher also admitted that Dr. Arizpe could use his right hand as a support for his phone or other objects[44] and that he is, through the use of his orthotic device, able to walk on his own without assistance, a cane, or a walker.[45]  These opinions are also conclusively rebutted by Dr. Maher's letter dated July 13, 2017, in which she asserted that Dr. Arizpe could conduct histories and physicals on patients "without any issues or restrictions,"[46] her own medical records, which show that he had at least 4/5 strength in all of the tested extremities, continued "to live an active lifestyle," and "work[ed] out at the gym regularly,"[47] and her report, in which she asserted that he "has right arm and leg *weakness*" and has "minimal *functional use of his right arm and hand*."[48]  These statements confirm that Dr. Arizpe has not suffered the "*total* loss of use for *every* purpose or activity without *any* possibility of recovery of" of one hand or one foot.

In addition, Dr. Maher's declaration testimony should be stricken or disregarded in light of her admissions that she was unaware of numerous facts that directly controvert her conclusory statements.  For example:

- Even though Dr. Arizpe is by his own admission working between 15 to 30 hours per week performing administrative activities for his medical practice,[49] Dr. Maher

---

[43] Exhibit C (Maher Deposition) at 122:12-14.
[44] *Id.* at 133:20-24, 134:5-9.
[45] *Id.* at 99:22-100:22, 116:13-117:11, Ex. 21.
[46] *Id.* at 89:9-22, Ex. 16.
[47] *Id.* at 70:8-12, 71:20-72:3, 117:23-118:2, 119:8-22, Exs. 9, 22.
[48] Document 34 (Plaintiffs' Appendix) at PLTF APX 152.  In her report, Dr. Maher omitted the term "total," which is a key word in those riders.  *See id.* (asserting that Dr. Arizpe "meets the criteria of 'loss for any reason and every purpose or activity with irrecoverable loss of one hand and one foot'").
[49] Document 28 (Appendix) at App. 284-285.

testified that she did not believe he was currently employed, did not know if he was earning any money from any source, and did not believe he was capable of performing such activities for three to six hours a day[50]; and

- Even though Dr. Arizpe was, several days a week, driving himself in a golf cart to a local gym to work out for an hour a day,[51] Dr. Maher asserted that she had "no knowledge" of those activities and did not know how he regularly got to the gym.[52]

Finally, Dr. Maher's statements are entitled to no weight because they are contradicted by Dr. Arizpe's own testimony that he can still use both hands.[53] Specifically, Dr. Arizpe testified:

Q:      And then you have not lost the use of both hands, correct?

A:      Correct.

Q:      You have not lost the use of both feet, correct?

A:      No, not both.

Q:      And you have not lost the use of one hand and one foot, correct?

A:      I haven't -- I don't have much use of my right hand. It's a lot less.

***

Q:      So you have not suffered the total loss of use for any and every purpose or activity without any possibility of recovery of one hand and one foot, correct?

A:      Correct.  That's mainly my right foot.[54]

Dr. Arizpe's testimony regarding his limitations certainly controls over Dr. Maher's conclusory, and uninformed, opinion to the contrary,[55] and these conclusory statements in the Maher

---

[50] Exhibit C (Maher Deposition) at 23:15-22, 79:2-80:10.

[51] Exhibit A (Arizpe Deposition) at 220:9-221:6, 308:15-309:23.

[52] Exhibit C (Maher Deposition) at 29:16-22, 119:8-22.  Dr. Maher subsequently admitted that she was aware Dr. Arizpe drove a golf cart on occasion but asserted that she was not aware of the frequency with which he did.  *Id.* at 30:5-12.

[53] Exhibit A (Arizpe Deposition) at 274:9-20.

[54] *Id.* at 165:12-21, 166:18-22.

[55] *Turman v. Colonial Life & Acc. Ins. Co.*, No. 3:06CV125-B-A, 2008 WL 352490, at *3 (N.D. Miss. Feb. 7, 2008) (entering summary judgment in the insurer's favor, even though the plaintiff's physician had written letters asserting that she had lost all use of her left arm and left leg, where the physician's records showed some use of those extremities).

Declaration should be stricken or disregarded.[56]

Finally, Dr. Maher's efforts, like those of Rhinehart, to prove up her report through the Maher Declaration fail as a matter of law.[57]  Dr. Maher's report constitutes inadmissible hearsay, as it is neither sworn nor made under penalty of perjury,[58] and this deficiency is not overcome by the assertion in her declaration that a "true and correct copy" of her report is attached.[59]  The Court should thus disregard or strike Exhibit 10-B to the Maher Declaration.

**E.   Two of the exhibits to the Powell Declaration should be stricken or disregarded.**

Principal Life also objects to consideration of two of the documents attached to the Powell Declaration.[60]  The Powell Declaration purports to prove up copies of the Illustration and the Policy as those documents were produced by Principal Life in discovery.[61]  Of course, Plaintiffs attached copies of those two documents to the Second Amended Complaint,[62] and Principal Life included copies of them in the Appendix.[63]  Moreover, the copy of the Policy attached to the Powell Declaration reflects the terms of the Policy as of September 1, 2016, which is the policy anniversary just prior to the onset of Dr. Arizpe's claim,[64] whereas the copy that Plaintiffs attached to the Second Amended Complaint and that Principal Life included in the Appendix reflect the

---

[56] *See Melton v. Texas Ins. & Annuity Ass'n of America*, 114 F.3d 557, 559 (5th Cir. 1997) ("A summary assertion made in an affidavit is simply not enough evidence to raise a genuine issue of material fact."); *see also Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (observing that "affidavits setting forth ultimate or conclusory facts are insufficient to either support or defeat a motion for summary judgment").

[57] Document 34 (Plaintiffs' Appendix) at PLTF APX 140.

[58] *See Palafox*, 728 F. App'x at 276 (holding that the district court did not err in excluding unsworn expert reports).

[59] *See Highland Capital Management, L.P.*, 2013 WL 4502789, at *6.

[60] Document 34 (Plaintiffs' Appendix) at PLTF APX 20-106.

[61] *Id.* at PLTF APX 20 (purporting to prove up the Illustration (PLTF APX 22-34) and the Policy (PLTF APX 35-91)).

[62] Document 25 (Second Amended Complaint), Exs. 1 (Policy) & 2 (Illustration).

[63] Document 28 (Appendix) at App. 124-180.

[64] *See* Document 34 (Plaintiffs' Appendix) at PLTF APX 38 (reflecting an Adjustment Date for the Data Page of September 1, 2016).

terms of the Policy as issued and delivered, on or about October 31, 2011, to Dr. Arizpe.[65]  As such, the Court should strike or disregard the copies of the Illustration and the Policy attached to the Powell Declaration.

**F.**     **The Court should consider the errata page to Wyse's deposition.**

Finally, the Court should consider the errata page to Wyse's deposition.  In the Response, Plaintiffs repeatedly cite testimony from Wyse in support of their assertion that Principal Life somehow engaged in misconduct by sending the Policy directly to Dr. Arizpe instead of forwarding it to Wyse for delivery.[66]  Plaintiffs conveniently ignore, however, that in the very excerpt on which they rely, Wyse admitted that "it's possible" that Principal Life sent the Policy to him for delivery:

> Q.     …  Did that policy come to you to review prior going to the Arizpes?
>
> A.     My -- that time period was a -- so, no, not to my recollection.  It went direct to the Arizpes, and I received the advisor's summary documents.
>
> Q.     Why did Principal not send it to you?
>
> A.     *So to answer that question, it's – you know, again, I -- it's possible they did.*  My recollection is that it went directly to Arizpe because I did not have a copy in my records.[67]

On this ground alone, the Court should find that Wyse's testimony does not raise a fact issue preventing summary judgment.  Moreover, Wyse has, through his errata page, clarified this matter by stating that his office sent a package to Plaintiffs on September 2, 2011, which possibly was the Policy.[68]  The Court should thus consider Wyse's errata page in addressing his testimony.

---

[65] Document 25 (Second Amended Complaint), Ex. 1 at APX 1-57; Document 28 (Appendix) at App. 124-180.
[66] *See* Document 33 (Response) at 4-5, 10, 20, 21, 22, 24-25, 27, 28 (citing Document 34 (Plaintiffs' Appendix) at PLTF APX 112, 119).
[67] Document 34-1 (Plaintiffs' Appendix) at PLTF APX 114.  While Principal Life believes it sent the Policy to Wyse for delivery to Dr. Arizpe, the delivery mechanics are, as set forth herein, irrelevant to the resolution of the Motion.  *See Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1166 (5th Cir. 1993) (disregarding summary judgment evidence on the ground it was irrelevant).
[68] Exhibit D (Wyse's errata page) at 1.

## V. **CONCLUSION**

Principal Life respectfully requests that the Court strike or disregard the evidence in Plaintiffs' Appendix as set forth above and consider Wyse's errata page with the deposition testimony from him in Plaintiffs' Appendix.

Respectfully submitted,

By:     /s/ Andrew C. Whitaker
        Andrew C. Whitaker
        State Bar No. 21273600
        andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEYS FOR DEFENDANT
PRINCIPAL LIFE INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 18, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:  Mr. Evan Lane (Van) Shaw, Mr. David J. Welch, and Mr. Jeremy B. (Beau) Powell, Law Offices of Van Shaw, 2723 Fairmount, Dallas, Texas 75201.

/s/ Andrew C. Whitaker
Andrew C. Whitaker