UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. NICHOLAS ARIZPE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:18-CV-1010-G |
| PRINCIPAL LIFE INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendant Principal Life Insurance

Company ("Principal") to strike the plaintiffs' summary judgment evidence, *see*

Motion to Strike (docket entry 38), and for summary judgment pursuant to Federal

Rule of Civil Procedure 56 (docket entry 26). For the reasons stated below,

Principal's motion to strike is granted in part and denied in part, and its motion for

summary judgment is granted.

## I. BACKGROUND

### A. Factual Background

The plaintiffs in this case, Doctor Nicholas Arizpe and his wife Rebekah

Arizpe (collectively "the Arizpes"), reside in Tarrant County, Texas. *See* Second

Amended Complaint (docket entry 25) at 1. Principal, the defendant, is an Iowa insurance company licensed by the Texas Department of Insurance with its principal place of business located in Des Moines, Iowa. *Id*. at 2; Answer to Second Amended Complaint (docket entry 31) at 1.

In or around May 2011, Doctor Arizpe finished his medical residency in San Antonio, Texas. Response to Defendant's Motion for Summary Judgment ("Response") (docket entry 33) at 2; Defendant's Appendix in Support of Summary Judgment ("Appendix in Support") (docket entry 28) at 33. At around the same time, the Arizpes contacted Erik Wyse ("Wyse") for financial planning services based on the recommendation of Rebekah's brother. Appendix in Support at 33-34. Soon thereafter, Wyse and the Arizpes entered into a financial planning agreement, in which Wyse agreed to provide financial planning and investment advisory services in exchange for the Arizpes' payment of a $750.00 annual fee. Appendix in Support at 34, 77-87, 242; Plaintiffs' Appendix in Support of Response to Motion for Summary Judgment ("Appendix in Support of Response") (docket entry 34) at 1. Importantly, at the time the Arizpes retained Wyse as their financial advisor, the Arizpes knew that he was affiliated with multiple insurance companies.[1] Motion for Summary Judgment at 3; Appendix in Support at 245, 272.

---

[1] In fact, during the course of their relationship Wyse sold the Arizpes several insurance policies issued by different insurers. Motion for Summary Judgment at 3; Appendix in Support at 243, 245, 256, and 272.

In July 2011, Doctor Arizpe joined an anesthesia team in Dallas and began working as a full-time anesthesiologist. Appendix in Support of Response at 1. Shortly after this, Doctor Arizpe decided to look into purchasing a disability income insurance policy. *Id*. Because Wyse had previously provided the Arizpes with financial planning services, Doctor Arizpe sought Wyse's assistance in finding such a policy. Appendix in Support of Response at 1. To best inform Wyse as to the type of policy Doctor Arizpe was searching for, Doctor Arizpe asked Wyse to obtain disability income insurance quotes "with all the bells and whistles." Appendix in Support at 35, 39. Wyse then presented the Arizpes with several disability income insurance policy illustrations, including one illustration from MetLife and one illustration from Principal. Appendix in Support of Response at 1-2, Appendix in Support at 36, 88-99 (MetLife Illustration), 100-113 (Principal Illustration).

In pertinent part, Principal's illustration provided on multiple pages that it was "Prepared for Nicholas Arizpe" and that "th[e] illustration is valid for presentation in Texas." *See* Appendix in Support at 104-113. Moreover, the seventh page of the Principal illustration contained descriptions of the Capital Sum benefit rider and Presumptive Disability benefit rider that would automatically be added to Doctor Arizpe's policy. *Id*. at 106. With respect to the Capital Sum rider, the seventh page of the illustration stated that the Capital Sum rider (HH 751):

> Provides a one time lump-sum benefit of $153,000 to help
> you adjust financially if you have a total loss of use

- 3 -

without any possibility of recovery, of the sight in one eye
or the use of a hand or foot.  This benefit is payable in
addition to any other benefit of the policy you qualify to
receive.

*Id*. at 106.  With respect to the Presumptive Disability rider (HH 755), the seventh

page of Principal's illustration provided that:

You will receive $12,750 a month if you permanently lose
the power of speech, hearing in both ears, sight in both
eyes, or use of both hands, both feet, or one hand and one
foot.  Benefits will start to accrue when the presumptive
disability occurs and will continue to be paid, as long as
the loss continues regardless of your ability to work or earn
an income.

*Id*. at 106.

Furthermore, the ninth page of Principal's illustration included a description of

the Catastrophic Disability benefits rider (HH 752) that would become part of

Doctor Arizpe's policy.  *Id*. at 108.  This description provided:

This rider provides a monthly benefit of $8,000 in
addition to your monthly disability benefit (and social
insurance substitute benefit if on the policy) in the event
you become catastrophically disabled solely due to an
Injury or Sickness and have a total loss of use for any and
every purpose or activity without any possibility of
recovery of the power of speech, hearing in both ears, sight
in both eyes or the use of both hands, both feet or one
hand and one foot.  CBD presumptive disability is paid
from the date of disability and does not require an
elimination period.

*Id*. at 108.  Also on the same page, just below this description, was a paragraph

stating:

> This illustration is a general description, but it is not the
> policy, and does not modify the provisions of any policy or
> rider.  Policy definitions and provisions may vary in some
> states.  Please read your policy carefully for exact
> definitions in your state.  This policy contains certain
> terms, exclusions and limitations.  Contact your Principal
> Life representative for complete details.

*Id*. at 108.

What's more, the tenth page of Principal's illustration included a table that is reproduced below:



*Id*. at 109.  Unlike the previous description of the Catastrophic Disability rider on page seven, which stated that this benefit would be paid "in the event you . . . have a total loss of use for any and every purpose without any possibility of recovery of the power of speech, hearing in both ears, sight in both eyes or the use of both hands, both feet or one hand and one foot[,]" *see id*. at 106,  the table on page ten explained

that the Catastrophic Disability Benefit could be paid if the client became Activities

of Daily Living ("ADL") disabled, cognitively impaired, or presumptively disabled.

*Id*. at 109. This table also included a statement that:

> Policy and rider definitions and provisions may vary in
> some states.  Please read your policy carefully for exact
> definitions in your state.  Contact your Principal Life
> financial representative for complete details.

*Id*.  The twelfth page of Principal's illustration also included a similar admonition

that:

> This illustration is a general description, it is not the
> policy, and does not modify or change the provisions of
> any policy or rider.  Policy definitions and provisions may
> vary by state, read your policy carefully for the exact
> definitions and provisions.

*Id*. at 111.

After receiving both the MetLife and Principal illustrations, the Arizpes started

reviewing the illustrations with Wyse.  *Id*. at 37, 248.  At no point during their

review process did the Arizpes express concerns to Wyse about the multiple

admonitions in Principal's illustration that specifically stated that the illustration was

not the policy and that the policy's terms would control.  *Id*. at 37, 71, 246, 248,

273.  Regardless, after his review, Doctor Arizpe decided to apply to Principal for a

disability income policy in part because he believed it would offer the most benefits.

Appendix in Support of Response at 2.   Accordingly, Doctor Arizpe worked with

Wyse to fill out an application for a Principal policy.  *Id*.

While filling out the application, it was the intention of both Wyse and Doctor Arizpe to include Principal's illustration as part of Doctor Arizpe's application. Appendix in Support of Response at 2, 113. In fact, in the Optional Benefit Riders section of Doctor Arizpe's application, Wyse wrote in "see illustration attached." Appendix in Support at 114 (containing first page of the application); Appendix in Support of Response at 113 (explaining that the handwriting on the first page belonged to Wyse). Moreover, on the third page of the application, there was an additional handwritten instruction to "See Attached Contract." Appendix in Support at 116. As part of the application, Doctor Arizpe acknowledged that "no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of [Principal's] rights." *Id*. at 121. Ultimately, on June 29, 2011, Doctor Arizpe completed and signed the disability insurance application for Principal's disability income insurance policy. Appendix in Support at 40, 114-122.

A few months later, on September 1, 2011, Doctor Arizpe's disability income insurance policy became effective. *Id*. at 127. Shortly thereafter, on October 31, 2011, Doctor Arizpe signed Part D of his application for disability income insurance through Principal, entitled "Agreement/Acknowledgment of Delivery." *Id*. at 123. By signing this page, Doctor Arizpe acknowledged that his Principal disability insurance policy was delivered to him by October 31, 2011 and that it is based on his life. *Id*.

On the first page of Doctor Arizpe's policy, Principal encouraged Doctor Arizpe to "**PLEASE READ THE POLICY CAREFULLY**" because the policy's terms provided that if Doctor Arizpe was not satisfied with the policy for any reason, he could return it within thirty days for a full refund of any premiums paid.  *Id*. at 124 (bold and all caps in original).  Since Doctor Arizpe believed that his policy contained the terms as Principal's illustration, Doctor Arizpe did not comply with Principal's admonition, nor did Doctor Arizpe exercise his right to return the policy within thirty days of its receipt.  Appendix in Support at 43-44 ("We did not do – read every 7– 57 pages of that, as it says in bold. . . . I did not return it to you within 30 days.").

In addition to this admonition, Doctor Arizpe's policy also included a paragraph explaining that:

> Only [Principal's] corporate officers may modify or waive anything in, or approve changes to, the policy.  The change must be attached to the policy.  No one else, including the agent or broker, has the authority to change the policy or waive any provision.

*Id* at 145.  More importantly, however, Doctor Arizpe's policy also included the Capital Sum, Presumptive Disability, and Catastrophic Disability benefit riders.  *See* Appendix in Support at 148-149, 154.

With respect to the Capital Sum rider (HH 751), which calls for a payment of a one-time benefit of $179,520.00, Doctor Arizpe's policy provided:

[Principal] will pay the Capital Sum Benefit shown on the Data Page if an Injury or Sickness results in Your total loss of use for any and every purpose or activity without any possibility of recovery of:

    1. The use of a hand or foot; or
    2. The sight of an eye.

*Id*. at 148. Furthermore, with respect to the Presumptive Disability rider (HH 755),

Doctor Arizpe's policy stated, in relevant part:

PRESUMPTIVE DISABILITY occurs while the policy and this rider are in force and prior to the Age 65 Policy Anniversary or five years after the Policy Date, whichever is later; and is an Injury or Sickness resulting in Your total loss of use for any and every purpose or activity without any possibility of recovery of:

    a)    Power of speech; or
    b)    Hearing in both ears; or
    c)    Sight of both eyes; or
    c)    The use of both hands, both feet, or one hand and one foot.

*Id*. at 154. As for the Catastrophic Disability rider (HH 752 TX), which calls for a

monthly benefit of $8,000.00, Doctor Arizpe's policy provided:

CATASTROPHIC DISABILITY/CATASTROPHICALLY DISABLED – means, solely due to an Injury or Sickness, You have a total loss for any and every purpose or activity without any possibility of recovery of:

    1.    Power of speech; or
    2.    Hearing in both ears; or
    3.    Sight of both eyes; or
    4.    The use of both hands, both feet, or one hand and one foot.

*Id*. at 149.

Doctor Arizpe's policy also included as an attachment the application submitted by Wyse and Doctor Arizpe. *Id*. at 168-180. Interestingly, the illustration Doctor Arizpe and Wyse intended to attach to Doctor Arizpe's application was not included in the application as it appeared as part of Doctor Arizpe's policy. *Id*. at 45, 70, 168-180, 250, 272, 319. Despite the missing illustration, Doctor Arizpe did not exercise his right to return the policy within 30 days. *Id*. at 43-44.

Years later, on September 18, 2016, Doctor Arizpe suffered a grand mal seizure at home and was subsequently transported to Baylor Grapevine Hospital. Appendix in Support of Response at 11-12. Doctor Arizpe was then transferred to Baylor Scott and White Medical Center where he was diagnosed with anaplastic astrocytoma brain tumor of his left temporal lobe, stroke, and vision impairment. Appendix in Support of Response at 12-13; Appendix in Support at 338. The next morning Doctor Arizpe had surgery to remove his brain tumor. Appendix in Support at 185. On the same day, Rebekah Arizpe contacted Wyse with questions concerning the details of Doctor Arizpe's disability insurance policy with Principal. Appendix in Support of Response at 14-15. Wyse responded by email on September 21, 2017, with a quick summary of the policy information. Appendix in Support at 252, 277. Wyse's email specifically stated that "<u>The ACTUAL policy has the facts and all benefits</u>." *Id*. at 277 (underlining and capitalization in original).

A few days later, on September 27, 2016, Doctor Arizpe was admitted to the Baylor Institute for Rehabilitation, where he stayed until his discharge on October 22, 2016. Appendix in Support at 185. Two days later, on October 24, 2016, Doctor Arizpe began receiving outpatient brain injury rehabilitation services from the Centre for Neuro Skills until his discharge on August 31, 2017. *Id*. at 222. While Dr. Arizpe was in recovery, Rebekah Arizpe received assistance from Wyse with making a claim under Doctor Arizpe's disability insurance policy and on November 3, 2016, Wyse sent Principal copies of the disability claim notice for Doctor Arizpe. Appendix in Support at 185-202, 253. Two weeks later, on November 17, 2016, Travis Griffith ("Griffith"), an employee of Principal, conducted his initial interview with Rebekah, in which he inquired as to Doctor Arizpe's ability to conduct activities of daily living. Appendix in Support of Response at 16; Motion for Summary Judgment at 9. The same day Griffith sent a letter to Doctor Arizpe acknowledging receipt of his claim and outlining the provisions in Doctor Arizpe's policy. Appendix in Support at 4-8. This letter included an explanation of the Catastrophic Disability rider, which specifically stated:

> To be eligible to benefits under the Rider, you must be Catastrophically Disabled. Catastrophic Disability means solely due to an Injury or Sickness, You are unable to perform two or more Activities of Daily Living without Assistance; or You are Cognitively Impaired; or You are Presumptively Disabled.

*Id*. at 7.

Almost a month later, on December 14, 2016, Griffith sent Doctor Arizpe a letter explaining that Principal had approved Doctor Arizpe's claim for disability benefits under the policy. *Id*. at 203. This letter also informed Doctor Arizpe that at the time of the letter Principal was still seeking additional information to determine whether Doctor Arizpe was entitled to benefits under the Catastrophic Disability, Presumptive Disability, Supplemental Health and Capital Sum riders within his policy. *Id*. To this day, Doctor Arizpe has received full benefits for total disability on his claim and has not had to pay any premiums for his policy. Appendix in Support at 48. [2]

On February 16, 2017, Wyse reached out to Griffith via email to inquire as to the status of Doctor Arizpe's Supplemental Health Benefit and Catastrophic Disability Benefit under the policy. Appendix in Support at 9. The next week, on February 24, 2017, Griffith had a phone conversation with Rebekah Arizpe, in which he asked her about Doctor Arizpe's Activities of Daily Living. *Id*. at 10. In response to his questions, Rebekah said that Doctor Arizpe has to use a walker to move around and requires assistance with showering and opening food items. *Id*. The same day Griffith emailed Wyse to inform Wyse of Griffith's telephone

---

[2] Specifically, to date Principal has paid $349,159.13 in monthly disability benefits to Doctor Arizpe, has waived premiums under his policy totaling $14,208.74, and has paid Doctor Arizpe the one-time Supplemental Health Benefit of $89,760.00. *Id*. at 3.

conversation with Rebekah. *Id*. at 13. In response, Wyse asked Griffith to provide him with the criteria or qualifications for the Catastrophic Disability rider in Doctor Arizpe's policy. *Id*. at 12. Griffith responded on the same day with a picture of the definition of "Catastrophic Disability/ Catastrophical Sickness" as it appears in Doctor Arizpe's policy. *Id*. at 11-12.

In late March of 2017, Griffith sent Doctor Arizpe another letter informing him that Principal had approved his claim for the Supplemental Health Benefit. *Id*. at 205. In the same letter, Griffith also explained that Principal determined that Doctor Arizpe did not qualify for Capital Sum, Catastrophic Disability, or Presumptive Disability benefits under his policy. *Id*. at 205-207. In particular, Griffith's letter explained that Principal based its denial of these benefits on medical records it received that demonstrated improvements in Doctor Arizpe's ambulation, visual scanning, floor transfers, his ability to advocate for himself, and his ability to vocalize frustrations. *Id*. at 205-206. The next day, Rebekah Arizpe emailed Wyse that she had found Doctor Arizpe's policy, compared it to the illustration provided by Principal, and learned that Doctor Arizpe's policy had a more restrictive definition of Catastrophic Disability than stated in the table on page 10 of the illustration. *Id*. at 211, 249.

On April 3, 2017, Wyse emailed Griffith once more explaining the Arizpes' confusion with the Catastrophic Disability rider in Doctor Arizpe's policy. *Id*. at 15.

Shortly after this email, Rebekah Arizpe requested copies of Doctor Arizpe's policy and his claim file, which Principal sent to Doctor Arizpe on April 25, 2017. Motion for Summary Judgment at 11; Appendix in Support at 17.

On May 6, 2017, Wyse reached out to Griffith via email and requested that Griffith "confirm or deny whether Activities of Daily Living (ADLS) are part of [Doctor Arizpe's] policy in any form." Appendix in Support at 18. On July 31, Griffith emailed Wyse to explain that Principal's "illustrations are a brief summary of the policy provisions and riders and cannot provide the level of detail ultimately outlined by the policy." *Id*. at 22. Griffith's email continued that "the policy that was issued on 9-1-2011 to Dr. Arizpe must be the basis for the administration of any claim under the policy . . . We will have to consider Dr. Arizpe's claim for the Catastrophic Disability benefit based on the definition under the policy." *Id*. A few days later, Griffith sent Doctor Arizpe an additional letter indicating that Principal was not changing its previous decision to deny Doctor Arizpe's claims for Capital Sum, Catastrophic Disability, and Presumptive Disability benefits under his policy. *Id*. at 214.

Ultimately, the Arizpes took issue with Principal's final determination as to these benefits because they believed that, based on the language included in the table on page 10 of Principal's illustration, Doctor Arizpe qualified for these benefits. *See* Second Amended Complaint at 9. Accordingly, the Arizpes filed this suit.

B. <u>Procedural Background</u>

The Arizpes filed their original petition on September 25, 2017, in a Texas state court in Dallas County. *See* Notice of Removal (docket entry 1) at 1. In their petition, the Arizpes asserted numerous claims, including breach of contract, negligence, and violations of the Texas Deceptive Trade Practices Act ("DTPA"), to list a few, against Principal, Wyse, and WealthStar Advisors, LLC ("WealthStar"). *See generally* Plaintiff's Original Petition (docket entry 1-2). The Arizpes then voluntarily dismissed WealthStar and Wyse as parties by filing a notice of nonsuit without prejudice as to WealthStar on November 3, 2017, and a notice of nonsuit without prejudice as to Wyse on April 20, 2018. *See* Notice of Removal at 2. As a result of these dismissals, complete diversity of citizenship arose between the Arizpes and Principal. *Id*. Consequently, on April 20, 2018, Principal filed its notice of removal and removed the case to this court. *Id*. at 1.

By the time Principal removed this case to federal court, however, it had already filed in Texas state court its original answer to the Arizpes' petition. *See* Principal's Original Answer (docket entry 1-6) (generally and specially denying the allegations in the Arizpes' petition). Nevertheless, after the case had been removed, Principal filed a plea in abatement, an amended answer, and a counterclaim (docket entry 7) on May 4, 2018. In this combined pleading, Principal: (1) asked the court to abate the action until July 1, 2018 due to the Arizpes' failure to give Principal

written notice of their claims at least sixty days before filing their petition; (2)

provided an amended answer which asserted multiple affirmative defenses; and (3)

asserted a counterclaim that the claims brought by the Arizpes under the Texas

Insurance Code and DTPA were groundless, brought in bad faith, or brought for the

purpose of harassment, thereby entitling Principal to reasonable and necessary

attorney's fees and court costs. *See* Plea in Abatement, Amended Answer, and

Counterclaim. Principal followed up on this motion by filing a joint motion to abate

the case on June 7, 2018. *See* Joint Motion to Abate Case (docket entry 9). The

court granted this motion on June 11, 2018, thereby abating the case until July 1,

2018. *See* Order Abating Case (docket entry 10).

On November 5, 2018, the Arizpes filed an unopposed motion for leave to file

their first amended complaint. *See* Motion for Leave to File First Amended

Complaint (docket entry 17). The court granted this motion the next day, *see* Order

Granting Motion for Leave to File First Amended Complaint (docket entry 18), and

the Arizpes filed their first amended complaint on November 8, 2018. First

Amended Complaint (docket entry 20). The Arizpes then filed an unopposed motion

for leave to file a second amended complaint on November 15, 2018. *See* Unopposed

Motion for Leave to File Second Amended Complaint (docket entry 21).

On November 21, 2018, Principal filed its answer to the Arizpes' first

amended complaint. Answer to Amended Complaint (docket entry 22). One week

later, on November 28, 2018, the court granted the Arizpes' motion for leave to file their second amended complaint. Order Granting Motion for Leave to File Second Amended Complaint (docket entry 24). The Arizpes then filed their second amended complaint a day later on November 29, 2018. *See* Second Amended Complaint (docket entry 25). In their Second Amended Complaint, the Arizpes asserted claims that Principal: (1) breached its contract, as well as express and common law implied warranties, by denying Doctor Arizpe's claims for Capital Sum, Catastrophic Disability, and Presumptive Disability benefits; (2) acted negligently and made negligent misrepresentations with respect to Principal's illustration that stated Catastrophic Disability benefits could be paid if the insured becomes ADL Disabled; (3) breached its duty of good faith and fair dealing by denying Doctor Arizpe's claims for the Capital Sum, Catastrophic Disability, and Presumptive Disability benefits; (4) violated the Deceptive Trade Practices Act and Texas Insurance Code by making misrepresentations about the terms of Doctor Arizpe's policy; (5) committed promissory estoppel, and (6) committed fraud in regards to the Catastrophic Disability Benefit Rider. *See* Second Amended Complaint at 11-22.

Before filing an answer to the Arizpes' second amended complaint, Principal filed its motion for summary judgment on November 30, 2018. *See* Motion for Summary Judgment. By way of this motion, Principal contends that it is entitled to judgment as a matter of law on all of the Arizpes' claims. *See* Brief in Support of

Motion for Summary Judgment ("Brief in Support") (docket entry 27) at 1. Additionally, in its motion for summary judgment Principal clarifies that it is not presently seeking summary judgment on its counterclaim. *See* Motion for Summary Judgment at 2, n. 3.

On December 12, 2018, the Arizpes filed their answer to Principal's counterclaim. *See* Answer to Counterclaim (docket entry 29). Principal then filed its answer to the Arizpes' second amended complaint on December 13, 2018. *See* Answer to Second Amended Complaint (docket entry 31). On December 21, 2018, the Arizpes filed their response to Principal's motion for summary judgment. *See* Response to Summary Judgment (docket entry 33). Principal filed its reply in support of summary judgment on January 18, 2019. *See* Reply in Support of Summary Judgment (docket entry 370). On the same date, Principal also filed its motion to strike parts of the Arizpes' appendix in support of their response. *See* Motion to Strike.

About a month later, on February 8, 2019, the Arizpes filed their response to Principal's motion to strike. *See* Response to Motion to Strike (docket entry 43). On February 22, 2019, Principal filed its reply to its motion to strike. Reply in Support of Motion to Strike ("Reply to Motion to Strike) (Docket entry 46). A short while later, on March 5, 2019, Principal filed its motion for leave to file notice of additional authority in support of its motion for summary judgment. *See* Motion for

Leave to File Notice of Additional Authority (docket entry 49).  The Arizpes then

filed their response in opposition to Principal's motion for leave on March 26, 2019.

See Response to Motion for Leave (docket entry 50).

On April 30, 2019, the court granted Principal's motion for leave to file notice

of additional authority and allowed the Arizpes 10 days to file a response to the

same. *See* Order Granting Motion for Leave (docket entry 52).  On the same date,

Principal filed its notice of additional authority.  *See* Sur-reply (docket entry 53).

Finally, on May 10, 2019, the Arizpes filed their response to Principal's sur-reply.

See Response to Sur-reply (docket entry 55).  Consequently, Principal's motion for

summary judgment and motion to strike are now ripe for decision by the court.

## II.  ANALYSIS

### A.  Summary Judgment Legal Standard

Summary judgment is proper when the pleadings, depositions, admissions,

disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a), (c)(1).[3] A fact is material if the governing substantive law

identifies it as having the potential to affect the outcome of the suit.  *Anderson v.*

---

[3]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in her favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response

to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## 1. *Principal's Motion to Strike: Evidentiary Objections*

Before considering the merits of Principal's motion for summary judgment, the court must address Principal's objections to evidence relied on by the Arizpes in their response. *See* Motion to Strike. The court will only consider the evidentiary objections specifically raised by Principal. See *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) ("Documents presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use.").

Principal has first moved to strike paragraphs 3, 9, 9.a, 9.b, 10, and 14.a of the Arizpe declaration because they "constitute impermissible speculation regarding either Rebekah, who has not submitted a declaration, or what might have happened if [Doctor] Arizpe had met with Wyse to review the policy." Motion to Strike at 5-6. In response to Principal's objection, the Arizpes contend that these paragraphs "must not be struck as the statements are based on [Doctor] Arizpe's personal knowledge gained through the process of seeking and eventually acquiring the disability policy at issue." Response to Motion to Strike at 1. Alternatively, the Arizpes contend that even if the court finds that the statements contained in Doctor Arizpe's declaration

are speculative as they pertain to Rebekah Arizpe, the court should only strike the portion of such statements referencing her. *Id*. at 1-2.

After reviewing these statements, the court concludes that the statements in Doctor Arizpe's declaration referencing Rebekah need not be struck. A review of the Arizpes' deposition testimony demonstrates that Rebekah and Doctor Arizpe were with each other throughout the process of acquiring the Principal disability policy and that Doctor Arizpe would have personal knowledge of their decisions regarding the policy. The court also concludes, however, that the paragraph in Doctor Arizpe's declaration explaining what he would have done had he reviewed the policy with Wyse is quintessential speculation. Thus, Principal's objections to paragraphs 3, 9, 9., 9.b, 10, and 14.a of the Arizpe declaration are SUSTAINED IN PART AND OVERRULED IN PART. The court will not consider paragraph 14.a in deciding its motion for summary judgment. See *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.) (finding that unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence), *cert. denied*, 513 U.S. 871 (1994).

Principal next objects to paragraphs 4.a, 8, 11.a, and 18.a of the Arizpe declaration because they "constitute hearsay for which no exception applies." Motion to Strike at 6. In particular, Principal alleges that paragraph 4.a contains inadmissible hearsay because it contains out of court statements about what Doctor

Arizpe allegedly told Wyse. *Id*. Principal also specifically alleges that paragraphs 8 and 11.a of the Arizpe declaration contains hearsay because they contain statements about what Wyse allegedly told or represented to Doctor Arizpe. *Id*. Furthermore, Principal argues that the statement contained in paragraph 18.a about what Doctor Arizpe has since learned in regards to Principal's insurance practices in Texas is hearsay, since what he has allegedly learned is predicated entirely on what his attorneys have told him out of court. *Id*.; Reply to Motion to Strike at 3.

In response, the Arizpes contend that paragraph 4.a of the Arizpe declaration contains no hearsay, since Doctor Arizpe's statement specifying the type of coverage he was seeking to receive is not hearsay as it is not being offered to prove the truth of the matter asserted. Response to Motion to Strike at 2. The Arizpes do not clarify what it is being offered to prove, however. *Id*. The Arizpes also contend that the challenged testimony in paragraphs 8 and 11.a regarding the statements of Wyse are not hearsay since they are statements of an opposing party under Federal Rule of Evidence 801(d)(2). *Id*. Finally, the Arizpes contend that the statement challenged in paragraph 18.a is not hearsay because it is based on Doctor Arizpe's personal knowledge. *Id*.

Having reviewed these statements, the court concludes that Principal's hearsay objections to paragraphs 4.a, 8, 11.a, and 18.a must be SUSTAINED IN PART AND OVERRULED IN PART. Although the Arizpes contend that Doctor Arizpe's

statement in paragraph 4.a is not offered for the truth of the matter asserted, they fail to specify any other purpose for which it is offered. Moreover, as Principal points out, the Arizpes rely on the statement in paragraph 4.a for its truth in their summary judgment response. *See* Reply to Motion to Strike at 3; Response at 2. Accordingly, the court will not consider paragraph 4.a in deciding Principal's motion for summary judgement.

Furthermore, while the Arizpes contend that Doctor Arizpe's statement in paragraph 18.a is not hearsay since it is based on his personal knowledge, the court agrees with Principal that Doctor Arizpe's statement in paragraph 18.a is objectionable hearsay. As Principal demonstrates in its reply, Doctor Arizpe's personal knowledge is predicated entirely on what Doctor Arizpe's attorneys told him about the testimony of Principal's employees at their depositions. *See* Exhibit E to Reply to Motion to Strike (docket entry 46-1) at 2-6. Accordingly, the court will not consider paragraph 18.a in determining Principal's motion for summary judgment.

With respect to paragraphs 8 and 11.a, the court concludes that the statements contained therein are admissions of a party opponent under Federal Rule of Evidence 801(d)(2) and are thus admissible against Principal's hearsay objections. These statements are offered against Principal and were made by Principal's agent,[4]

---

[4]     Section 4001.051(b) of the Texas Insurance Code establishes that a person is an agent of an insurer if the person "solicits insurance on behalf of the

(continued...)

Wyse, concerning a matter within the scope of the agency and during the existence of the agency relationship. Moreover, despite Principal's argument that Wyse's statements in paragraphs 8 and 11.a are irrelevant because both Doctor Arizpe's policy application and disability insurance policy included language indicating that no Principal agent could change the terms of Doctor Arizpe's policy, *see* Reply to Motion to Strike at 4, the court finds these paragraphs are relevant to the Arizpes' claims for misrepresentation and violations of the DTPA and Texas Insurance Code. Thus, the court will consider these paragraphs in deciding Principal's motion for summary judgment.

Next, Principal objects to paragraphs 11 and 12 of the Arizpe declaration, because these paragraphs contain certain statements that are contradicted, without explanation, by Doctor Arizpe's prior deposition testimony. Motion to Strike at 6-7. Specifically, Principal contends that Doctor Arizpe's statement in paragraph 11 that "I made sure that Wyse included the Illustration as an attachment to the

---

[4](...continued)
insurer" or "receives or transmits other than on the person's own behalf an application for insurance or an insurance policy to or from the insurer." *See* Texas Insurance Code § 4001.051(b). Here, evidence submitted by both parties establishes that Wyse solicited Principal's insurance policy to Doctor Arizpe, *see* Appendix in Support at 35-37, and that Wyse received Doctor Arizpe's application, Appendix in Support of Response at 113. Furthermore, although Principal points out that the Arizpes both employed Wyse as a financial advisor and utilized his services in obtaining insurance policies with other companies prior to the Arizpes' search for disability insurance, *see* Reply to Motion to Strike at 4, these facts do not negate Wyse's status as Principal's agent.

Application" should be struck because it contradicts his deposition testimony that he did not know whether the illustration was attached. Motion to Strike at 6; Exhibit A to Motion to Strike (docket entry 38-1) at 5. Principal also argues Doctor Arizpe's statement in paragraph 12 that "Principal never contacted me and told me that the Illustration was removed from the Application" should be struck because it contradicts his deposition testimony that he did not know if the illustration was attached, as well as his deposition testimony that he received the original policy, which included the application without the illustration, on October 31, 2011. Motion to Strike at 7; Exhibit A to Motion to Strike at 5, 16-17. In response, the Arizpes contend that Doctor Arizpe's prior deposition testimony is consistent with his statements in paragraphs 11 and 12 of his declaration. Response to Motion to Strike at 2-3.

After reviewing these paragraphs, as well as Doctor Arizpe's deposition testimony, the court concludes that Principal's objections must be SUSTAINED IN PART AND OVERRULED IN PART. In the court's view, paragraph 11 of the Arizpe declaration contradicts his prior deposition testimony that he did not know whether the illustration was attached to his policy application. Therefore, the court will not consider this paragraph and will consider Doctor Arizpe's deposition testimony as controlling. See *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("[T]his court does not allow a party to defeat a motion for summary

judgment using an affidavit that impeaches, without explanation, sworn testimony."). Nevertheless, the court concludes that paragraph 12 of the Arizpe declaration does not contradict his prior deposition testimony. Doctor Arizpe's testimony that he did not know whether his application included the illustration is consistent with his statement that Principal never reached out to Doctor Arizpe and affirmatively stated that the illustration was removed from his application. Similarly, Doctor Arizpe's statement in paragraph 12 is consistent with the fact that Doctor Arizpe received his policy, including his application without the illustration attached, by October 31, 2011. The court will thus consider paragraph 12 of Doctor Arizpe's declaration in determining Principal's motion for summary judgment.

Principal additionally objects to multiple paragraphs of Jerry Rhinehart's declaration included in the Arizpes' appendix in support of their response to Principal's summary judgment motion. *See* Motion to Strike at 7-11. First, Principal specifically objects to statements made in paragraphs 8.d, 8.e, 8.f, and 8.k of the Rhinehart declaration because these statements "constitute impermissible speculation or conjecture." Motion to Strike at 7. In response to this objection, the Arizpes contend that the statements contained within these paragraphs cannot be struck because they are "Rhinehart's expert opinions, formed based on his education, background, extensive experience (dating back to 1975) in the insurance industry, and review of numerous documents and depositions from this lawsuit." Response to

Motion to Strike at 3. Having reviewed paragraphs 8.d, 8.e, 8.f, and 8.f of the Rhinehart declaration, the court concludes that these paragraphs do not constitute impermissible speculation; rather, as the Arizpes have pointed out, these paragraphs contain Rhinehart's opinions, based on his experience in the insurance industry and review of evidence in this lawsuit. Thus, Principal's objection to paragraphs 8.d, 8.e, 8.f, and 8.k of the Rhinehart declaration on grounds of impermissible speculation is OVERRULED.

Next, Principal objects to statements in paragraphs 8.d, 8.e, 8.f, 8.g, 8.h, 8.j, and 8.k of the Rhinehart declaration because these statements constitute impermissible legal conclusions. Motion to Strike at 7-8. In response to these objections, the Arizpes again claim that these statements must not be struck since they are only Rhinehart's expert opinions, based on his education, background, extensive experience, and review of numerous documents and depositions from this lawsuit. Response to Motion to Strike at 3. Upon review, the court agrees with Principal that paragraphs 8.d, 8.e, 8.f, 8.g, 8.h, 8.j, and 8.k of the Rhinehart declaration should be struck. Rhinehart's statements in these paragraphs constitute his conclusions of law as to Principal's performance of the duties it owed Doctor Arizpe (paragraphs 8.d, 8.e, 8.f, 8.g, and 8.h) or Principal's contractual performance of Doctor Arizpe's insurance policy (paragraphs 8.j and 8.k). Therefore, Principal's objection to paragraphs 8.d, 8.e, 8.f, 8.g, 8.h, 8.j, and 8.k of the Rhinehart

declaration is SUSTAINED and the court will not consider these paragraphs in its determination of Principal's motion for summary judgment. See *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) ("unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.") (internal quotations omitted).

Principal also moves to strike paragraph 8.b of the Rhinehart declaration as it "constitutes hearsay for which no exception applies." Motion to Strike at 8. Interestingly, the Arizpes did not raise a specific argument against this objection in their response. *See* Response to Motion to Strike at 3-5. Regardless, after reviewing Principal's objection to paragraph 8.b of the Rhinehart declaration, the court agrees with Principal and concludes paragraph 8.b of the Rhinehart declaration should be struck for the same reasons the court articulated above in regards to paragraph 18.a of Doctor Arizpe's declaration.

Principal also alleges that "many statements in the Rhinehart Declaration should be stricken or disregarded because they are contradicted, without explanation, by his prior deposition testimony." Motion to Strike at 8. Although Principal did not specify which statements within Rhinehart's declaration it was specifically objecting to as contradictory in its motion to strike, Principal clarified in its reply brief that it was referring to paragraphs 8.d, 8.e, 8.f, 8.g, and 8.j of the Rhinehart

declaration. As the court has already concluded to strike these paragraphs because they contain impermissible legal conclusions, the court need not address Principal's argument that these paragraphs should be struck as contradictory to Rhinehart's deposition testimony.

Principal next argues that paragraphs 8.b, 8.f, 8.g, 8.h, and 8.i of the Rhinehart declaration should be struck by the court as these paragraphs contain "opinions on matters that Rhinehart did not address in his report." Motion to Strike at 10. According to Principal, "[f]ollowing the preparation of his [expert] report (which is dated November 26, 2018) and his deposition (which occurred on December 19, 2018), [the Arizpes'] counsel apparently provided Rhinehart with additional documents, including excerpts from the deposition of [the Arizpes] and Wyse and the [i]llustration." *Id*. Principal alleges that Rhinehart then used these additional documents to form his opinions as reflected in paragraphs 8.b, 8.f, 8.g, 8.h, and 8.i of his declaration. *Id*. Principal thus contends that the Arizpes failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B), which requires that an expert witness must prepare a report containing a complete statement of all opinions the witness will express and the facts and data considered by the witness, among other things. *See* Federal Rule of Civil Procedure 26(a)(2)(B); Motion to Strike at 10-11. Accordingly, Principal argues that paragraphs 8.b, 8.f, 8.g, 8.h, and 8.j of the Rhinehart declaration must be struck or disregarded under Federal Rule of Civil Procedure 37(c)(1) for

failing to comply with the disclosure requirements of Rule 26(a).  Motion to Strike at 10-11.

The Arizpes argue that these paragraphs need not be struck because during Rhinehart's deposition he discussed the opinions now challenged by Principal, thereby giving Principal the opportunity to cross-examine Rhinehart.  Response to Motion to Strike at 4-5.   In particular, the Arizpes assert that because these opinions were discussed during his deposition, "there is no surprise or prejudice to [Principal] from the opinions in the declaration of Mr. Rhinehart that allegedly were not in Mr. Rhinehart's report."  Response to Motion to Strike at 5.

Despite the Arizpes' claim that Principal suffered no prejudice from the opinions contained within Rhinehart's declaration that were based on matters not included in Rhinehart's expert report, the court agrees with Principal that these paragraphs should be struck.  The text of Federal Rule of Civil Procedure 37 is clear: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  *See* Federal Rule of Civil Procedure 37(c)(1).  Here, the Arizpes have not provided a substantial justification as to why they departed from the requirements of Rule 26(a), nor can it be said that their failure to comply was harmless, as Principal "did not have the opportunity to question Rhinehart about the specific statements in the Rhinehart

Declaration, which was signed two days after his deposition." Reply to Motion to Strike at 7. Therefore, the court SUSTAINS Principal's objection and will not consider paragraphs 8.b, 8.f, 8.g, 8.h, and 8.i in deciding Principal's motion for summary judgment.

Additionally, Principal also moves to strike the entirety of Rhinehart's expert report attached as Exhibit 9-B to his declaration as included in the Arizpes' appendix in support of their response to Principal's summary judgment. Motion to Strike at 11. Specifically, Principal alleges that Rhinehart's report should be disregarded by the court because it "constitutes inadmissible hearsay, as it is neither sworn nor made under penalty of perjury." *Id*. Additionally, Principal alleges that the Arizpes' attempts to prove up Rhinehart's unsworn report fail as a matter of law, because an unsworn expert report cannot be "overcome by the mere expedient of a subsequent declaration stating that a 'true and correct copy' of the expert report is attached." *Id*. (citing *Highland Capital Management, L.P. v. Bank of America, National Association*, No. 3:10-CV-1632-L, 2013 WL 4502789, at *6 (N.D. Tex. Aug. 23, 2013) (Lindsay, J.)). In response, the Arizpes argue that because Rhinehart's declaration was sworn to under the penalty of perjury and also contains the same opinions that are within Rhinehart's expert report, *Highland Capital Management, L.P.* is inapplicable and Rhinehart's expert report should not be struck. Response to Motion to Strike at 5.

After reviewing Rhinehart's declaration, his expert report, and *Highland Capital Management, L.P.*, the court agrees with Principal and concludes that Principal's objection to Rhinehart's expert report must be SUSTAINED.   As Judge Lindsay determined in *Highland Capital Management, L.P.*, a statement in an expert's sworn declaration that "true and correct" copies of the expert's unsworn report are attached does not cure the deficiencies of the unsworn expert report.   *Highland Capital Management, L.P.*, 2013 WL 4502789, at *6.  Therefore, regardless of Rhinehart's statement in his declaration that "[a] true and correct copy of [his] November 26, 2018, report is attached . . . to this declaration and incorporated herein as if set forth in full[,]" his expert report is still unsworn and thus does not qualify as competent summary judgment evidence.[5]  *Id*; see also *Provident Life & Accident Insurance Company v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) ("Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary

---

[5]      This is true despite the Arizpes' argument that the *Highland Capital Management, L.P.* is inapplicable because Rhinehart's sworn declaration contains the same opinion as his report.  First, while Rhinehart's declaration and report contain some of the same opinions, Rhinehart's report also includes a plethora of factual information that Rhinehart did not have personal knowledge of, which would also make his report inadmissible under Federal Rule of Civil Procedure 56(c)(4).   In *Highland Capital Management, L.P.*, Judge Lindsay determined that the expert report in question was additionally deficient because it contained numerous factual matters of which the expert had no personal knowledge, despite the expert's sworn declaration stating that matters in her declaration were based on personal knowledge.  *Highland Capital Management, L.P.*, 2013 WL 4502789 at *6.

- 33 -

judgment.").  Consequently, the court will not consider Rhinehart's expert report in deciding Principal's motion for summary judgment.

Principal next urges multiple objections to paragraphs 9[6], 10[7], and 10.a[8] of the declaration of Doctor Elizabeth Maher, M.D., Ph.D., included in the Arizpes' appendix in support of their response.  Motion to Strike at 11-13.  In particular, Principal alleges that paragraphs 9, 10, and 10.a of Doctor Maher's declaration should be struck because: (1) they are conclusory assertions that are contradicted by Doctor Maher's deposition testimony; (2) they are contradicted by Doctor Maher's own letter, dated July 13, 2017, clearing Doctor Arizpe to conduct histories and physicals on patients; (3) they are directly refuted by Doctor Arizpe's own medical records; and (4) they are contradicted by Doctor Arizpe's own deposition testimony

---

[6]     In paragraph 9 of her declaration, Doctor Maher states "Dr. Arizpe has suffered a total loss of use of his right foot and a total loss of use of his right hand." Appendix in Support of Response at 141.

[7]     In paragraph 10 of her declaration, Doctor Maher asserts: "Dr. Arizpe, because of his cancer, stroke, treatment side effects, chronic pain syndrome requiring multiple medications, and severe functional limitations, is precluded from practicing medicine."  Appendix in Support of Response at 141.

[8]     In paragraph 10.a of her declaration, Doctor Maher states "I do not believe Dr. Arizpe's conditions described above can be remedied via any reasonable effort; further, we have attempted all reasonable efforts to remedy Dr. Arizpe's conditions described above.  Despite all attempts, Dr. Arizpe still suffers from a total loss of use of his right hand and a total loss of use of his right foot."  Appendix in Support of Response at 141.

that he can still use both hands.  Motion to Strike at 11-13; Exhibit C to Motion to Strike (docket entry 38-3) at 14-15, 16-17, 20, and 21-22.

In response, the Arizpes maintain that paragraphs 9, 10, and 10.a of Doctor Maher's declaration should not be struck because they are not unsupported conclusions.  Response to Motion to Strike at 5-6.  Rather, the Arizpes allege, these paragraphs reflect Doctor Maher's opinions, which are in turn based upon personal knowledge she gained through serving as Doctor Arizpe's treating physician for over two years.  *Id*.  In addition, the Arizpes contend that Doctor Maher's former deposition testimony that Doctor Arizpe has some use of his right arm and hand does not contradict paragraphs 9 or 10.a of her declaration, because her deposition testimony was about the use of his right arm *and* hand, and there is no dispute that Doctor Arizpe can use his right arm.  *Id*. at 6.  The Arizpe's also maintain that Doctor Maher's former deposition testimony that Doctor Arizpe can support objects with his right hand and can use an assistive device on his foot to walk do not contradict paragraphs 9 and 10a of her declaration and that, if anything, her declaration and deposition testimony demonstrate how the "loss of use" language in Doctor Arizpe's policy is ambiguous.  *Id*.  Furthermore, the Arizpes also maintain that the opinions contained within paragraphs 9, 10, and 10.a of Doctor Maher's declaration should not be struck simply because Doctor Maher was unaware that Doctor Arizpe was working part-time at his former practice or that he went to the gym, as her opinions

are formed based on her treatment and observations of Doctor Arizpe. *Id*. Finally, the Arizpes claim that despite Principal's argument that Doctor Maher's declaration is contradicted by Doctor Arizpe's deposition testimony, a full review of Doctor Arizpe's deposition shows that he later clarified: (1) that he did not believe he could use his hand as an anesthesiologist; (2) that he could not use his foot; and (3) that he could not feel anything in his right hand. *Id*. at 7; Exhibit 1 to Response to Motion to Strike (docket entry 43-1) at 12-14.

Having reviewed both parties' arguments concerning these paragraphs, the court concludes that Principal's objection to paragraphs 9, 10, and 10.a of the Maher declaration must be SUSTAINED. In short, although the court agrees with the Arizpes that paragraphs 9, 10, and 10.a of the Maher declaration are based on her personal knowledge as Doctor Arizpe's physician and are thus not unsubstantiated conclusions, these paragraphs are directly contradicted by Doctor Maher's prior deposition testimony, her letter, her medical records, and her report. While the court agrees there is some room to argue that her prior deposition testimony is consistent with these paragraphs, it is clear to the court that: (1) her July 13, 2017, letter asserting that Doctor Arizpe could conduct histories and physicals on patients directly refutes paragraph 10 of her declaration; (2) her medical records showing that Doctor Arizpe had 4/5 strength in his tested extremities, continued "to live an active lifestyle," and "work[ed] out at the gym regularly" contradict paragraphs 9 and 10.a

of her declaration; and (3) her report stating that Doctor Arizpe has "minimal functional use of his right arm and hand" contradict paragraphs 9 and 10.a of her declaration.  *See* Appendix in Support of Response at 152; Appendix in Support at 302; Exhibit C to Motion to Strike at 20, 29-41.  Therefore, the court will not consider these paragraphs in its evaluation of Principal's motion for summary judgment.[9]

Principal also objects to Doctor Maher's expert report as attached to her declaration, as it "constitutes inadmissible hearsay and is neither sworn nor made under penalty of perjury."  Motion to Strike at 14.  As with the Rhinehart report, Principal contends that the Arizpes' attempt to prove up this report by including a statement in Doctor Maher's declaration that a "true and correct copy" of her report is attached are insufficient to make Doctor Maher's report competent summary judgment evidence.  *Id*.  In response, the Arizpes make the same argument as they did with the Rhinehart report—that because the opinions contained within Doctor Maher's report are the same as those set forth in her sworn declaration, her report is proper summary judgment evidence.  The court disagrees with the Arizpes for the same reasons set forth above with respect to the Rhinehart report.  Principal's

---

[9]        The court does not render a decision as to Principal's arguments that paragraphs 9, 10, and 10.a of Doctor Maher's declaration should be struck because of her lack of knowledge of certain facts or because Doctor Arizpe's own deposition testimony is controlling on these issues, however.

objection to the Maher report is thus SUSTAINED and the court will not consider this report in determining Principal's motion for summary judgment.

Continuing with its objections, Principal also objects to two exhibits attached to the declaration of J. Beau Powell, which were included as part of the Arizpes' appendix in support of their response. Motion to Strike at 14. First, Principal objects to the version of Doctor Arizpe's insurance policy attached to the Powell declaration because it is not the original policy and is instead a policy that "reflects the terms of the Policy as of September 1, 2016, which is the policy anniversary just prior to the onset of [Doctor] Arizpe's claim." Motion to Strike at 14-15. Principal contends that because both the copy of Doctor Arizpe's policy that is attached to the Arizpes' second amended complaint as well as the copy of his policy included in Principal's appendix reflect the terms of the policy as originally issued to Doctor Arizpe, the court should disregard the copy included in the Powell declaration. *Id*. The Arizpes contend that the court need not strike the policy attached to the Powell declaration, however, because it reflects the policy as delivered to Rebekah when she asked for a replacement. Response to Motion to Strike at 7; Appendix in Support of Response at 35 (stating that the policy attached to the Powell declaration is a duplicate policy in lieu of a lost or destroyed policy). Importantly, as Principal points out in its reply to its motion to strike, both policies are the same with respect to the riders at issue in this case. Reply to Motion to Strike at 8-9. Thus, while the policy

attached to the Powell declaration may be somewhat cumulative, the court concludes there is no reason to strike it as evidence.

Second, Principal objects to the copy of the illustration Principal prepared for Doctor Arizpe that is included as an attachment to the Powell declaration. Motion to Strike at 14-15. Principal argues because the illustration is the exact same as the copies of the illustration included in Principal's appendix as well as the Arizpes' second amended complaint, the court should strike it as cumulative. *Id*. In short, the court agrees. Thus, Principal's objections to the exhibits attached to the Powell declaration are SUSTAINED IN PART and OVERRULED IN PART, and the court will strike Exhibit 3 of the Arizpes' appendix in support of their response as needlessly cumulative.

Principal's last point in its motion to strike concerns the errata page to Wyse's deposition. Motion to Strike at 15. Principal contends that the court should consider the errata page to Wyse's deposition in ruling on Principal's motion for summary judgment since it clarifies Wyse's earlier deposition testimony regarding whether Principal sent Wyse a copy of Doctor Arizpe's policy. *Id*. In particular, Principal contends that the Arizpes repeatedly cite testimony from Wyse in support of their argument that Principal engaged in misconduct by sending the policy directly to Doctor Arizpe rather than to Wyse, and that Wyse's errata page provides more information on this issue because Wyse clarifies on this page that his office sent a

package that possibly contained Doctor Arizpe's policy to the Arizpes on September 2, 2011. *Id*. at 15; Exhibit D to Motion to Strike (docket entry 38-4) at 3. The Arizpes, on the other hand, contend that the court should not consider Wyse's errata page because it was not timely returned to the parties and was curiously "provided to the parties just one day before [Principal's] motion to strike . . . was filed." Response to Motion to Strike at 8. Principal points out in its reply, however, that the Arizpes have not moved to strike the errata sheet as untimely. Reply to Motion to Strike at 9. Moreover, Principal also argues in its reply that because the record lacks evidence as to when Wyse received notice from the court reporter that the transcript of his deposition was available for review, it is not known whether Wyse's errata page was untimely. *Id*.

Having considered each party's arguments, the court agrees with Principal that Wyse's errata page should be considered in deciding Principal's motion for summary judgment. In particular, the court finds that Wyse's errata page provides some clarification as to an issue that is important to this case and relevant to many of the Arizpes' claims.

Although the court has now evaluated each argument in Principal's motion to strike, the court is aware that towards the end of the Arizpes' response to Principal's motion to strike, the Arizpes ask the court for leave to allow them the opportunity to cure any deficiencies found by the court in their evidence. Response to Motion to

Strike at 8 (citing *Highland Capital Management, L.P.*, 2013 WL 4502789, at *17).

Much as Judge Lindsay noted *Highland Capital Management, L.P.*, "[w]hile the court

agrees that it has discretion to allow [the plaintiff] the opportunity to cure the

deficiency, it is not obligated to do so." *Highland Capital Management, L.P.*, 2013 WL

4502789, at *6. Here, the court declines to grant the Arizpes leave to cure the

deficiencies in their summary judgment evidence, particularly the deficiencies in both

Rhinehart's expert report and Doctor Maher's expert report. In general, the court

does not see how granting the Arizpes leave will allow them to cure: (1) the

speculative, contradicted, and hearsay statements in Doctor Arizpe's declaration; (2)

the impermissible legal conclusions and hearsay statements in Rhinehart's

declaration; (3) the statements in Rhinehart's declaration based on matters the

Arizpes should have disclosed in Rhinehart's report; (4) the contradicted statements

in Doctor Maher's declaration; and (5) the needlessly cumulative evidence attached

to the Powell declaration. Moreover, if the Arizpes are correct in their argument that

the expert reports of Rhinehart and Doctor Maher contain the same opinions as their

respective declarations, the court sees no reason why leave should be granted since

the court will consider these declarations in deciding Principal's motion for summary

judgment. *See* Response to Motion to Strike at 5, 7.

## 2. *Principal's Motion for Summary Judgment*

Now that the court has ruled on Principal's objections to the Arizpes' evidence, the court will consider Principal's motion for summary judgment. In its motion for summary judgment, Principal clarifies that it is only moving for summary judgment on all of the Arizpes' claims, but not on Principal's counterclaim. *See* Motion for Summary Judgment at 2, n. 3. Accordingly, the court will only analyze whether each of the Arizpes' claims survives Principal's summary judgment motion.

### a. *Rebekah Arizpe's Standing*

Before addressing each claim individually, however, the court finds it necessary to first examine Principal's argument regarding Rebekah Arizpe's standing to sue Principal. Brief in Support at 23-24. In its brief, Principal contends that Rebekah lacks standing under Texas law to sue Principal for breach of contract because she is not the insured under Doctor Arizpe's policy, she is not the owner of said policy, nor is she even mentioned within its four corners. *Id*. Additionally, Principal avers that Rebekah lacks standing to sue Principal for breach of contract as a third-party beneficiary to Doctor Arizpe's policy because there is no evidence that she qualifies as a third-party beneficiary under Texas law. *Id*. (citing *Chartis Specialty Insurance Co. v. Tesoro Corp.*, 113 F. Supp. 3d 924, 936 (W.D. Tex. 2015)). Principal also contends that Rebekah lacks standing to bring claims under either the DTPA or Texas Insurance Code, as she is not a "consumer" as defined in the DTPA or a "person" as

defined in the Texas Insurance Code. *Id*. at 23. Finally, Principal claims that Rebekah lacks standing to bring her tort claims under Texas law, since Principal "did not owe her any duties that it breached that caused her damages." *Id*. at 23-24.

In their response, the Arizpes argue that Rebekah has standing to bring all of her claims because she is a proper third-party beneficiary to Doctor Arizpe's policy. Response at 29-30. In particular, the Arizpes assert, Rebekah has standing as a third-party beneficiary to sue Principal for breach of contract since Doctor Arizpe's policy was purchased with the intent that it would benefit Rebekah. *Id*. at 30. Moreover, the Arizpes aver that because Principal made misrepresentations directly to Rebekah regarding the coverage provided by Doctor Arizpe's policy, she has standing to sue an insurer, such as Principal, for misrepresentations. *Id*. (citing *Brown & Brown v. Omni Metals, Inc.*, 317 S.W.3d 361, 382-83 (Tex. App.— Houston [1st Dist.] 2010, pet. denied)).

Having reviewed both parties' arguments, as well as the evidence cited therein, the court concludes that Rebekah Arizpe lacks standing to bring any of her claims.

First, it is clear that Rebekah lacks standing to sue Principal for breach of contract either as a party to the contract or a third-party beneficiary. The court need not devote much time to determining whether Rebekah has standing as a party to Doctor Arizpe's policy, since by her own admission she is not. *See* Appendix in

Support at 244.  The majority of the court's analysis on this issue is thus devoted to

determining whether Rebekah is a third-party beneficiary.

"To qualify as a third-party beneficiary of an insurance contract, a plaintiff

must prove that: (1) it was not privy to the contract; (2) the contract was made at

least in part for its benefit; and (3) the contracting parties intended to benefit the

plaintiff by their contract."  *Barrios v. Great American Assurance Co.*, No. H-10-3511,

2011 WL 3608510, at *3 (S.D. Tex. Aug. 16, 2011) (citing *Talman Home Federal

Savings & Loan Association of Illinois v. American Bankers Insurance*, 924 F.2d 1347, 1350

(5th Cir. 1991)).  A plaintiff claiming standing as a third-party beneficiary to a

contract has to satisfy the heavy burden of showing intent, since a court is limited to

only the "four corners of the instrument" when analyzing intent.  *Chartis Specialty

Insurance Co.*, 113 F. Supp. 3d at 936 (quoting *In re El Paso Refinery, LP*, 302 F.3d

343, 354 (5th Cir. 2002)).  As to proving intent, the Supreme Court of Texas has

explained

> The intention to contract or confer a direct benefit to a
> third party must be clearly and fully spelled out or
> enforcement by the third party must be denied.
> Consequently, a presumption exists that parties contracted
> for themselves unless it clearly appears that they intended
> a third party to benefit from the contract.

*Basic Capital Management, Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex.

2011).

Here it does not "clearly appear" from the four corners of Doctor Arizpe's policy that both Principal and Doctor Arizpe intended Rebekah Arizpe to be a third-party beneficiary. To begin with, the policy itself does not list Rebekah Arizpe as either the insured under, or owner of, Doctor Arizpe's policy. *See* Appendix in Support at 127 (listing Doctor Arizpe as both the insured and owner of the policy).[10] More importantly, Rebekah Arizpe is not listed as the "Benefit Recipient" as defined in the policy. *Id*. at 131. Under the terms of the policy, the benefit recipient is the person to whom the benefits of the policy will be paid. *Id*. The policy provides that the benefit recipient "means the person or entity named as the Benefit Recipient in the application." *Id*. Doctor Arizpe's application, however, does not list Rebekah Arizpe as a designated benefit recipient. Rather, in the benefit recipient section of Doctor Arizpe's application the word "same" is written in reference to Nicholas Arizpe, which is written just above. *Id*. at 169. In fact, as Principal pointed out in its brief, a thorough review of Doctor Arizpe's policy reveals that Rebekah is not mentioned once in either the policy or application. See *id*. at 124-180.

The Arizpes have thus not satisfied their burden of showing the court that Principal and Doctor Arizpe intended that Rebekah receive a direct benefit under

---

[10]     Rebekah Arizpe has admitted as much in her deposition testimony. Appendix in Support at 244. Although during her deposition Rebekah contended that her name was included in Doctor Arizpe's application, see *id*., the court's review of Doctor Arizpe's application reveals that Rebekah's name does not appear in any part of the application. *Id*. at 168-180.

Doctor Arizpe's policy. The only evidence cited by the Arizpes in support of their position consists of a statement in Doctor Arizpe's declaration that he and Rebekah "decided to look into purchasing a disability income insurance policy to ensure that [Rebekah] and our children would be protected in the event something happened in the future that would prevent me from practicing medicine." Response at 30 (citing Appendix in Support of Response at 1). While Doctor Arizpe's declaration may demonstrate the Arizpes' reason for seeking disability insurance, this evidence fails to show that the *parties* (including Principal) intended for Rebekah to receive a direct benefit from the contract. Furthermore, this evidence also fails as it is not evidence the court can properly consider in determining intent, as it is not within the four corners of Doctor Arizpe's policy. See *In re El Paso Refinery, LP*, 302 F.3d at 354 ("Regardless of whether TRMI benefits in some manner from the Term Sheet, it is still not a third-party beneficiary because the intent to benefit is not clear *from the language of the agreement*.") (emphasis added). Accordingly, the court concludes that Rebekah lacks standing to sue Principal on a breach of contract claim.[11]

---

[11]     For the same reasons the court concludes Rebekah Arizpe lacks standing to sue Principal for breach of contract, the court also concludes she lacks standing to bring a claim of promissory estoppel against Principal. Rebekah Arizpe is not a third-party beneficiary of the policy and the Arizpes do not point to any evidence demonstrating that Rebekah in particular is a promisee such that she has standing under Texas law to bring a promissory estoppel claim. See *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 762 (Tex. App— Fort Worth 2012, pet. denied) ("Because Appellants do not qualify as third-party beneficiaries of the purported

(continued...)

Second, the court concludes that Rebekah Arizpe lacks standing to sue Principal for a breach of its duty of good faith and fair dealing or for fraud. Texas law is clear that "[t]he existence of a contract, giving rise to a special relationship, 'is a necessary element of the duty of good faith and fair dealing.'" *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 262 (5th Cir. 1995) (quoting *Natividad v. Alexsis, Inc.*, 875 S.W.3d 695, 697 (Tex. 1994)). As explained above, Rebekah is not a party to the contract between Doctor Arizpe and Principal. Accordingly, Rebekah lacks standing to claim bad faith. See *Walker v. State Farm Lloyd's*, No. 3:03-CV-1514-R, 2004 WL 1462200, at *5 (N.D. Tex. June 28, 2004) (Buchmeyer, Senior J.).

Similarly, to have standing to sue for fraud a plaintiff must be the defrauded party in a transaction. See e.g., *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976). Here, because Rebekah was not a party to the contract, nor was she the intended beneficiary of the same, the court is unsure how she in particular could have been defrauded. The Arizpes have not helped to resolve the court's uncertainty, as they have not provided any evidence showing that Rebekah was defrauded. Consequently, the court concludes that Rebekah Arizpe has not shown how she was defrauded and thus lacks standing to sue Principal for fraud.

---

[11](...continued)
Vantage/SFWA contract and do not qualify as promisees to whom Vantage made any promise, they cannot create liability for Vantage or create some promise between themselves and Vantage where none exists as a matter of law. We hold the Appellants lack standing to assert a promissory estoppel cause of action. . . .").

Third, the court concludes that the Arizpes have failed to show that Rebekah has standing to sue Principal for violations of the Texas Insurance Code. Section 541.151 of the Texas Insurance Code "provides a private right of action for any 'person' who has sustained actual damages caused by another person's engaging in a specified unfair or deceptive act or practice." *PrevMED, Inc. v. MNM-1997, Inc.*, No. 3:14-CV-3960-D, 2015 WL 4162729, at *6 (N.D. Tex. July 10, 2015) (Fitzwater, J.) (citing Texas Insurance Code § 541.151 (former Texas Insurance Code Art. 21.21 §16(a))). "The term 'person' is defined in the Texas Insurance Code as 'an individual, corporation, association, partnership, reciprocal, or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor.'" *Id.* "Under Texas law, absent privity of contract or some sort of reliance by the person bringing a claim on the words or deeds of the insurer, a suit will not lie under § 541.151." *Id.* Furthermore, "where an insure[r] violates the Texas Insurance Code's prohibition of deceptive and unfair practices, and causes *actual damages* to the spouse of the insured as a result, the spouse has standing to sue under that act's provisions." *Guidry v. Liberty Mutual Insurance Co.*, No. 1:09-CV-440-TH, 2009 WL 8172998, at *1 (E.D. Tex. Oct. 21, 2009) (emphasis added).

Here, although the Arizpes have certainly pointed out statements made by Wyse and Principal that the Arizpes allege are misrepresentations, *see* Response at 3,

6, the Arizpes have failed to show how Rebekah Arizpe *in particular* relied on these statements or how any such reliance resulted in *her* pecuniary loss. For example, take the statements in the Arizpes' response and second amended complaint that the Arizpes relied on the misrepresentations of Wyse and Principal in selecting Doctor Arizpe's policy and attached riders. *See* Response at 4; Second Amended Complaint at 3. The court fails to see how Rebekah detrimentally relied on any of Principal's alleged misrepresentations in selecting the policy, as the evidence before the court establishes that Rebekah was not included in the policy application, nor the policy itself. *See* Appendix in Support at 124-180.

Even if it is assumed *arguendo* that Rebekah Arizpe detrimentally relied on Principal's alleged misrepresentations in selecting the policy, the Aripes have not shown how this reliance caused her any pecuniary loss. If anything, the evidentiary record shows that Rebekah suffered no loss, as she already had a disability insurance policy through her place of employment. Appendix in Support at 244. Rebekah Arizpe is thus dissimilar to the plaintiff in the case relied upon by the Arizpes, as there the plaintiff "base[d] its claims upon false and misleading representations about a third party's insurance coverage made to it by the insurer's agents *for its use in its business relations* and upon which Omni detrimentally relied *to its pecuniary loss*." *Brown & Brown of Texas, Inc.*, 317 S.W.3d at 383 (emphasis added). Instead, Rebekah Arizpe is situated more similarly to the plaintiffs in *PrevMED, Inc.*, who were found

to lack standing because they failed to show that they, in particular, relied on any misrepresentations to their detriment. See *PrevMED, Inc.*, 2015 WL 4162729 at *7. Accordingly, the court concludes that Rebekah Arizpe lacks standing to sue Principal for Texas Insurance Code violations.

Fourth, the court concludes that Rebekah Arizpe lacks standing to sue Principal under the DTPA. "The Texas Supreme Court has consistently held that only a consumer can maintain a cause of action directly under the DTPA." *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24, 27-28 (5th Cir. 2010) (quoting *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378, 386 (Tex. 2000)) (per curiam); *see also* Texas Business & Commerce Code § 17.50. Under the DTPA, consumer "means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services . . . ." Texas Business & Commerce Code § 17.45. Here, the Arizpes have offered no argument as to how Rebekah satisfies the DTPA's definition of consumer. *See* Response at 30. The only argument the court can distill from the Arizpes' response brief as to Rebekah Arizpe's standing to sue Principal under the DTPA is that she has standing as a third-party beneficiary to the policy. Response at 29-30. While it is true that under Texas law "a purchase consummated for the benefit of a third party makes that third party a consumer under the required liberal construction of the [DTPA]", see *Parker v. Carnahan*, 772 S.W.2d 151, 158 (Tex. App.–- Texarkana 1989, writ denied),

the court has already determined that Rebekah does not qualify as a third-party beneficiary to Doctor Arizpe's policy. Nor can the court conclude based on the record before it that Rebekah Arizpe sought or acquired the services of Wyse or Principal in relation to the disability policy at issue in this case, as she already had such a policy through her place of employment. *See* Appendix in Support at 244. Accordingly, the court concludes that Rebekah Arizpe lacks standing to sue Principal under the DTPA. See *White v. Provident Life & Accident Insurance Co*, No. A-96-CA-639 SS, Slip Op. at 4-6 (concluding that the wives of men who had purchased disability insurance policies were not consumers under the DTPA and therefore lacked standing).

Finally, the court concludes that Rebekah Arizpe lacks standing to bring any of her tort claims, including her claims of negligence and negligent misrepresentation. Texas law is clear that "[a] third-party . . . lacks standing to assert a cause of action for negligent mishandling of insurance claims because such claim belongs only to the insured." *Caplinger v. Allstate Insurance Co.* 140 S.W.3d 927, 931 (Tex. App.—Dallas 2004, pet. denied). Here, there is no dispute that Rebekah is not the insured under Doctor Arizpe's policy, thus meaning she lacks standing to sue Principal for negligent handling of Doctor Arizpe's claim.[12] Moreover, "[i]n order to have standing to bring

_____

[12]     Furthermore, the Arizpes have not pointed out any duties owed to Rebekah Arizpe and breached by Principal that could form the basis of Rebekah's

(continued...)

a negligent misrepresentation claim, a plaintiff must be 'the person for whose benefit the professional supplied the information.'" *Barraza v. Bank of America, N.A.*, No. EP-12-CV-35-KC, 2012 WL 12886438, at *5 (W.D. Tex. Aug. 13, 2012) (citing *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 177 (Tex. App.— San Antonio 2007, no pet.)).  Here, the Arizpes have failed to show that Wyse or Principal made any of the alleged misrepresentations for the benefit of Rebekah Arizpe.  Moreover, as explained above, Rebekah Arizpe is not the intended third-party beneficiary to Doctor Arizpe's policy, which is what the Arizpes allege Principal's misrepresentations were made about.  In light of the Arizpes' failures to prove that any of the alleged misrepresentations of Wyse or Principal were made for Rebekah Arizpe's benefit, the court concludes that she lacks standing to sue Principal for negligent misrepresentation.

Ultimately, because the court concludes that Rebekah Arizpe lacks standing to sue Principal for any of claims, the court GRANTS Principal's summary judgment motion on this issue.  Accordingly, the court DISMISSES all of Rebekah Arizpe's claims.

---

[12](...continued)
negligence claim.  For this reason, the court also concludes that Rebekah lacks standing to sue Principal for negligence.

b. *Statute of Limitations*

The court next turns to Principal's argument that it is entitled to summary judgment because all of Doctor Arizpe's claims are barred by limitations. Brief in Support at 2-6. In its brief, Principal argues that the limitations period for Doctor Arizpe's claims began to run in 2011 when he received his policy, since upon receipt Doctor Arizpe could have determined that its terms differed from those in the illustration he received. *Id*. at 3-4. Principal thus argues that by the time Doctor Arizpe filed this case on September 25, 2017, the two-year statute of limitations for his statutory claims and claims for negligence, negligent misrepresentation, and bad faith—as well as the four-year statute of limitations for his claims for breach of contract, promissory estoppel, and fraud—had run in full. *Id*. at 2-4. Furthermore, despite the Arizpes' claim that the discovery rule applies to their claims, *see* Second Amended Complaint at 25-26, Principal avers that the discovery rule is inapplicable since Doctor Arizpe discovered, or should have discovered, his injuries upon receipt of his policy. *Id*. at 4-5.

Doctor Arizpe raises two arguments in response to Principal's limitations defense. Response at 7-12. First, Doctor Arizpe argues that because his breach of contract claim arises out of Principal's denial of benefits under the Capital Sum, Catastrophic Disability, and Presumptive Disability riders in his policy, his claim for breach did not accrue until March 27, 2017, the date of Principal's denial. *Id*. at 7.

Because four years have not elapsed since March 27, 2017, Doctor Arizpe contends that his breach of contract claim is not barred by limitations. *Id*. Second, Doctor Arizpe contends that Principal is estopped from raising its limitations defense. *Id*. at 7-12. In particular, Doctor Arizpe argues that Principal is equitably estopped from raising limitations as a defense, because: (1) Principal made false representations to the Arizpes regarding the Catastrophic Disability rider in Doctor Arizpe's policy; (2) Principal intended the Arizpes to act on these representations; (3) Principal knew Doctor Arizpe's policy would not provide Catastrophic Disability benefits based on ADLs; (4) the Arizpes neither knew, nor had any way of knowing, that Doctor Arizpe's policy would not pay Catastrophic Disability benefits based on ADLs, since Principal did not send the policy to Wyse to review it with Doctor Arizpe; and (5) the Arizpes relied on Principal's misrepresentations to their detriment. *Id*. at 7-10. Additionally, Doctor Arizpe argues that quasi estoppel prevents Principal's limitations defense, since: (1) Principal accepted the benefits of its transaction with Doctor Arizpe; (2) Principal's present position concerning the Catastrophic Disability benefits is inconsistent with its previous position as reflected in the illustration; and (3) it would be unconscionable to allow Principal to maintain its current position. *Id*. at 10-12.

In its reply, Principal reiterates its position that Doctor Arizpe's claims are barred by limitations and raises new arguments to counter those raised in Doctor

Arizpe's response. Reply at 12-16. In particular, Principal contends that Doctor Arizpe's breach of contract claim is still barred by limitations despite Doctor Arizpe's arguments otherwise, because his true complaint "is not that he satisfies the terms of riders as they appear in [his] [p]olicy; rather, he believes that the [i]llustration's terms should modify the [p]olicy's terms through the incorporation of the Catastrophic Disability [t]able." *Id*. at 13. Thus, according to Principal, because Doctor Arizpe's breach of contract claim is still based on Principal's alleged misrepresentations about the terms of the policy, his claim for breach accrued when the policy was issued in 2011 and is now barred by limitations. *Id*. Furthermore, Principal asserts that Doctor Arizpe's equitable estoppel argument fails because upon receiving the policy the Arizpes knew or had a way of knowing that Doctor Arizpe's policy would not pay the Catastrophic Disability benefits based on ADLs. *Id*. at 13-14. Moreover, Principal avers that Doctor Arizpe's quasi-estoppel argument fails because the record lacks evidence that Principal has taken advantage of Doctor Arizpe to such a grossly unfair degree so as to be unconscionable. *Id*. at 15. Principal instead contends that the evidence before the court actually proves that Principal has not acted unconscionably because Principal has paid Doctor Arizpe hundreds of thousands of dollars to date under the terms of his policy. *Id*.

Under Texas law, claims for negligence, negligent misrepresentation, bad faith, violations of the DTPA, and violations of the Texas Insurance Code are subject to a

two-year limitations period.  *See* Texas Civil Practice & Remedies Code § 16.003 (negligence); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (negligent misrepresentation); *Garza-Trevino v. New England Financial*, 320 Fed. Appx. 203, 207 (5th Cir. 2009) (citing *Provident Life & Accident Insurance Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)) (bad faith); Texas Business & Commerce Code § 17.565 (DTPA); Texas Insurance Code § 541.162(a).  Claims for breach of contract, promissory estoppel, and fraud, on the other hand, are subject to a four-year limitations period.  *See* Texas Civil Practice & Remedies Code § 16.004 (breach of contract and fraud); *Prestige Ford Garland Limited Partnership v. Morales*, 336 S.W.3d 833, 837 (Tex. App.– Dallas 2011, no pet.) (promissory estoppel).  For the most part, when a cause of action accrues is a question of law in Texas.  *Provident Life & Accident Insurance Co.*, 128 S.W.3d at 221.  "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy."  *Id*.  There are exceptions to this rule, however.  For instance, "[t]he discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action."  *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).  Additionally, equitable estoppel and qausi-estoppel may bar a defendant's assertion of the statute of limitations.  See *Vaughn v. Sturm-Hughes*, 937 S.W.2d 106, 108 (Tex. App.– Fort Worth 1996, writ

denied) ("Equitable estoppel may bar a limitations defense when a party, his agent, or representative makes representations that induce a plaintiff to delay filing suit until the limitations period has run."); see also *Landers v. Nationstar Mortgage, LLC*, 461 S.W.3d 923, 927 (Tex. App.– Tyler 2015, pet. denied) (considering argument that quasi-estoppel may bar a defendant from asserting a limitations defense).

Here, it is clear that Doctor Arizpe's claim for breach of contract is not barred by limitations. In Doctor Arizpe's second amended complaint, he alleges that Principal breached its contract because it "denied the majority of [Doctor Arizpe's] claims asserting that the [p]olicy . . . did not cover the disability [Doctor Arizpe] alleged." Second Amended Complaint at 12. Doctor Arizpe's complaint thus establishes that his breach of contract claim arises from Principal's denial of benefits he claimed under his policy, rather than—as Principal contends—from any of Principal's alleged misrepresentations. Accordingly, the limitations period for Doctor Arizpe's claim for breach of contract did not accrue until March 27, 2017, the date Principal denied Doctor Arizpe's claims. See *In re Dick*, No. A-08-CA-351-SS, 2009 WL 10669203, at *2 (W.D. Tex. Feb. 9, 2009) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828-29 (Tex. 1990)). Furthermore, because Doctor Arizpe filed his complaint less than a year after Principal denied his claims, his breach of contract claim falls well within the four-year limitations period. Therefore, the court concludes that his breach of contract claim is not barred by limitations.

It is equally clear to the court, however, that Doctor Arizpe's remaining claims for negligence, negligent misrepresentation, bad faith, fraud, promissory estoppel, and violations of the DTPA and Texas Insurance Code are barred by limitations. Unlike Doctor Arizpe's breach of contract claim, Doctor Arizpe's remaining claims all arise out of Principal's alleged misrepresentations that the terms within Principal's illustration would match those in Doctor Arizpe's policy. *See* Second Amended Complaint at 12-22; *see also* Response at 16-28. Texas law is clear that "[a] cause of action based on an insurer's misrepresentation or failure to disclose in connection with the sale of an insurance policy accrues when the policy is issued." *Steadfast Insurance Co v. SMX 98, Inc.*, No. H-06-2736, 2009 WL 890398, at *16 (S.D. Tex. Mar. 30, 2009) (citing *Mauskar v. Hardgrove*, No. 14-02-00756-CV, 2003 WL 21403464, at *3 (Tex. App.– Houston [14th Dist.] 2003, no pet.)). "Misrepresentation claims accrue when the policy is issued because the insured has a duty to read the policy and is responsible for understanding the policy's terms and conditions." *Khoei v. Stonebridge Life Insurance Co.*, No. H-13-2181, 2014 WL 585399, at *7 (S.D. Tex. Feb. 14, 2014). Here, the evidence establishes that Doctor Arizpe received the original version of his policy no later than October 31, 2011. Appendix in Support at 69. All of Doctor Arizpe's misrepresentation-based claims thus accrued in 2011 when his policy issued. More importantly, by the time Doctor Arizpe filed

this case in 2017, the statutes of limitations for his misrepresentation-based claims had run.

Doctor Arizpe's argument that the discovery rule applies to defer the accrual of his misrepresentation-based claims does not convince the court otherwise. The discovery rule is a "very limited exception to statutes of limitations" which applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929-30 (Tex. 2011). "An injury is inherently undiscoverable if by its nature, it is 'unlikely to be discovered within the prescribed limitations period despite due diligence.'" *Id*. (citing *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996)). Here, Doctor Arizpe's injury was not inherently undiscoverable. In short, the court concludes that in the exercise of reasonable diligence, Doctor Arizpe could have learned of Principal's alleged misrepresentations and the inconsistencies between his policy and the illustration by reading his policy in 2011. See *Adaptive Modifications, LLC v. Atlantic Casualty Insurance Co.*, No. 4:18-CV-00864, 2019 WL 1904680, at *5-6 (E.D. Tex. Apr. 29, 2019). It is not the fault of Principal that Doctor Arizpe failed to heed Principal's admonition to read his policy carefully. Nor can it be said that Doctor Arizpe's injury is inherently undiscoverable, since by his own admission he probably could have seen that the

policy's terms were not the same as the illustration, had he read all 57 pages of his policy.[13]  *See* Appendix in Support at 69.

Doctor Arizpe nevertheless argues that there at least a fact question as to whether his injury was inherently undiscoverable because Wyse did not review the policy with him and he did not know that ADL-based disability insurance was prohibited in Texas.  Response at 22.  Doctor Arizpe's arguments miss the mark. First, Wyse did not need to review Doctor Arizpe's policy with him in order for his injury to be discoverable.  "Under Texas law, an insurance agent has no duty to explain policy terms, and the insured has a duty to read his [or her] insurance policy and is bound by its terms even if they were not fully explained."  *Adaptive Modifications, LLC*, 2019 WL 1904680, at *5.  It is thus of little importance that Wyse did not review the policy with Doctor Arizpe because Doctor Arizpe had a duty to read his policy and was bound by its terms regardless of Wyse's failure to provide an explanation.  Second, Doctor Arizpe did not need to have knowledge that ADL-based disability insurance was prohibited in Texas to know that the terms of his policy did not align with those contained within the illustration or Principal's alleged oral representations.  Much like the court found in *Hunton v. Guardian Life Insurance*

---

[13]     The fact that upon her first review of Doctor Arizpe's policy Rebekah Arizpe learned that the catastrophic disability benefits rider did not include the ADL language also indicates to the court that Doctor Arizpe's injury was not inherently undiscoverable.  *See* Appendix in Support at 211.

*Co. of America*, here even a cursory review of Doctor Arizpe's policy informs that

Principal's illustration and alleged oral representations did not coincide with the

terms of his written policy.[14]   See *Hunton v. Guardian Life Insurance Co. of America*,

243 F. Supp. 2d 686, 699 (S.D. Tex. 2002).   Consequently, the court concludes that

there is no question of fact as to whether the discovery rule applies to Doctor

Arizpe's misrepresentation-based claims.  Put simply, it does not.

　　　　The court is similarly unpersuaded by Doctor Arizpe's equitable estoppel

argument.  Under Texas law, the doctrine of equitable estoppel requires: "(1) a false

representation or concealment of material facts; (2) made with knowledge, actual

constructive, of those facts; (3) with the intention that it should be acted on; (4) to a

party without knowledge or means of obtaining knowledge of the facts; (5) who

detrimentally relies on the representations."  *Johnson & Higgins of Texas, Inc. v. Kenneco*

*Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998).  Moreover, to invoke equitable

estoppel to prevent an opponent from raising a limitations defense, a plaintiff must

---

[14]     This is true despite Doctor Arizpe's allegations that Griffith, Principal's
employee, made statements referring to ADLs during Doctor Arizpe's claim process.
As pointed out by Principal in its reply, Doctor Arizpe's policy clearly states that only
Principal's "corporate officers may modify or waive anything in, or approve any
changes to, the policy."  Reply at 14; Appendix in Support at 145.  Because Doctor
Arizpe was bound by the terms of the contract, he should have known that any
statements made by Griffith could thus not change the terms of Doctor Arizpe's
policy, especially in light of the fact that the policy also provides that "[t]he policy,
the attached applications, and any attached riders or endorsements make up the
entire contract."  Appendix in Support at 145.

show that "the [defendant], his or her agent, or representatives made representations that induce[d] the plaintiff to delay filing suit within the applicable limitations period." *Hill v. Bartlette*, 181 S.W.3d 541, 545 (Tex. App.–Texarkana 2005, no pet.).

Here, equitable estoppel does not apply to bar Principal's limitations defense. First, Doctor Arizpe has advanced no arguments, nor provided any evidence, that Principal made representations to delay the Arizpes from filing suit within the applicable limitations period. When discussing equitable estoppel in the response brief, Doctor Arizpe only discusses Principal's alleged false representations regarding the Catastrophic Disability benefit rider. Response at 8-9. In particular, Doctor Arizpe discusses Principal's alleged misrepresentations as contained within the illustration Principal prepared, as well as statements made by Griffith related to ADLs. *Id*. Doctor Arizpe has failed to explain, however, how these alleged misrepresentations were either intended to delay Doctor Arizpe from filing suit, or how his reliance on these representations resulted in such a delay.

Second, even if it is assumed *arguendo* that Principal's alleged misrepresentations induced Doctor Arizpe to delay filing suit, the evidence before the court does not prove that Doctor Arizpe lacked knowledge, or the means of obtaining knowledge, of the real facts. In fact, the evidence seems to establish the opposite. *See* Appendix in Support at 69 (containing Doctor Arizpe's admission that he could have determined the terms of his policy did not match the illustration if he had read

it upon its receipt); Appendix in Support at 211 (showing email from Rebekah Arizpe indicating that upon reviewing the policy she learned that the ADLs language was not in the policy). Despite this, in his response brief Doctor Arizpe contends that a question of fact exists as to equitable estoppel in part because he had no way of knowing that disability benefits based on ADLs were prohibited in Texas, nor could have known of the real facts in this case because Wyse was not able to review Doctor Arizpe's policy with Doctor Arizpe. Response at 10. As the court explained above, however, Doctor Arizpe's lack of knowledge about Texas insurance law does not affect his ability to know the facts of his case. Again, even a cursory review of Doctor Arizpe's policy would have revealed that it was not only inconsistent with Principal's illustration and alleged oral misrepresentations, but that Doctor Arizpe's contract consisted of only the policy and attached application and could not be changed by anyone except Principal's corporate officers.[15] See *Hunton*, 243 F. Supp. 2d at 699. Moreover, Wyse's inability to review the policy with Doctor Arizpe is irrelevant, because Doctor Arizpe had a duty to read his policy and was bound by its terms

---

[15]  Again, because Doctor Arizpe's policy explained that it could not be changed except by Principal's corporate officers, and because his contract consisted solely of his policy and the application attached to it, the court does not find that any of Griffith's alleged misrepresentations regarding ADLs during Doctor Arizpe's claim benefits raise a question of fact as to Doctor Arizpe's inability to determine the facts of his case. Put bluntly, Doctor Arizpe was charged with knowing the terms of his policy upon receipt, and those terms made clear the policy was inconsistent with Principal's illustration and that anything Griffith stated could not have changed the policy.

regardless of any explanation by Wyse. See *Adaptive Modifications, LLC*, 2019 WL 1904680, at *5. In short, nothing prevented Doctor Arizpe from knowing the facts of his case, or how the terms of his policy did not align with Principal's illustration. Consequently, Doctor Arizpe's equitable estoppel argument fails.

The court is also unconvinced by Doctor Arizpe's argument that Principal is barred from asserting its limitations defense by the doctrine of quasi-estoppel. *See* Response at 10-17. "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Specifically, quasi-estoppel applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* Moreover, to establish quasi-estoppel as a defense to limitations, "a party must show a statement or conduct by the opposing party prior to the running of the limitations period waiving its right to assert [its limitations defense.]" *Hartford Fire Insurance Co. v. City of Mont Belvieu, Texas*, 611 F.3d 289, 299 (5th Cir. 2010).

Here, Doctor Arizpe has not provided the court with evidence of statements or conduct previously taken by Principal indicating that Principal has waived its limitations defense. *See* Response at 10-12. Instead, Doctor Arizpe's quasi-estoppel argument focuses on the inconsistencies between Principal's prior and current

positions regarding the terms of the Catastrophic Disability Benefits rider in Doctor

Arizpe's policy. *Id*. at 10-11. Doctor Arizpe's quasi-estoppel argument is similar to

the plaintiff's in *Douglas v. Moody Gardens, Inc.*, No. 14-07-00016-CV, 2007 WL

4442617 (Tex. App – Houston [14th District] 2007, no pet.). There, the court

determined that the plaintiff could not rely on quasi-estoppel as an excuse for her

failure to timely file her worker's compensation claim even though her employer had,

in fact, changed its position. *Id*. at *4. In reaching its decision, the court concluded

that the plaintiff "is not denied recovery for her injury based on [her employer's]

inconsistent positions," but "because *she* elected not to timely pursue a worker's

compensation claim." *Id*. (emphasis in original). Here, the same holds true for

Doctor Arizpe. To the extent that there are any inconsistencies between Principal's

prior and current positions regarding the Catastrophic Disability rider, this has little

to do with Doctor Arizpe's failure to file his misrepresentation-based claims on time.

Nothing in the record before the court indicates that the inconsistent positions

Principal allegedly took regarding the Catastrophic Disability rider caused Doctor

Arizpe to delay filing suit until after the limitations period ended. Moreover, there is

no evidence before the court showing that Principal held inconsistent positions with

respect to its right to raise a limitations defense, or with respect to Doctor Arizpe's

right to bring suit for any misrepresentations he believed were made. The court thus

finds that is not unconscionable for Principal to raise its limitations defense. See

*Douglas*, 2007 WL 4442617 at *4. Consequently, the court concludes that Doctor Arizpe's quasi-estoppel argument fails because: (1) he has not shown the court that Principal has either taken inconsistent positions regarding its limitations defense, or that Principal made a representation during the running of the limitations period waiving its right to said defense; and (2) he has failed to prove that it would be unconscionable for Principal to raise such a defense.[16]

In sum, because the court is neither persuaded by Doctor Arizpe's discovery rule argument nor his estoppel arguments, the court concludes that Doctor Arizpe's misrepresentation-based claims accrued when he received his policy in 2011. Consequently, the court concludes that Principal is correct in arguing that Doctor Arizpe's claims for negligence, negligent misrepresentation, bad faith, fraud, promissory estoppel, and violations of the DTPA and Texas Insurance Code are

---

[16]    The court also finds that Doctor Arizpe's quasi-estoppel falls short because it does not appear to the court that Principal took inconsistent positions about the Catastrophic Disability rider. Principal's current position is that the Catastrophic Disability Benefits rider is not based on ADLs as stated in Doctor Arizpe's policy. *See* Appendix in Support at 3, 279-280. Its prior position, however, was that the specific terms of Doctor Arizpe's policy would control. *See* Appendix in Support at 108-09 (pages in Principal's illustration indicating that the illustration was general description and that the terms of the policy would control); Appendix in Support at 277 (email from Wyse stating that the actual terms of the policy would control). Because the exact terms of Doctor Arizpe's policy do not provide for Catastrophic Disability benefits based on ADLs, the court is not convinced that Principal's positions are inconsistent.

barred by limitations.  Accordingly, the court GRANTS summary judgment in favor of Principal as to these claims.[17]

c. *Breach of Contract*

Having granted summary judgment in Principal's favor as to all of Doctor Arizpe's other claims on limitations grounds, the court now directs its attention to Doctor Arizpe's remaining claim for breach of contract.  Under Texas law, to establish a claim for breach of contract the plaintiff must show: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Bridgmon v. Array Systems Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).  Here, only the third element is at issue.  Brief in Support at 6-11. Accordingly, the court will not address the other elements of Doctor Arizpe's breach of contract claim.   In its brief, Principal contends that it is entitled to summary judgment on Doctor Arizpe's breach of contract claim because it has done nothing to breach the terms of Doctor Arizpe's policy.[18]   Brief in Support at 6-11.  In particular, Principal avers that it did not breach Doctor Arizpe's policy by denying his claims for

_____

[17]     Because the court concludes that these claims are barred by limitations, it does not reach the merits of these claims.

[18]     In fact, Principal claims that it has actually complied with the terms of Doctor Arizpe's policy because it has not only paid him the one-time supplemental health benefit to which he is entitled, but it also continues to pay him monthly disability benefits pursuant to the terms of his policy.  Brief in Support at 6.

benefits under the Presumptive Disability, Catastrophic Disability, and Capital Sum riders because Doctor Arizpe failed to satisfy the terms of these riders as they appear in his policy. *Id*. at 7-11. Principal argues that Doctor Arizpe did not satisfy the terms of the Catastrophic Disability and Presumptive Disability riders because he can still speak, hear, see, use both of his hands, and use his left foot.[19] *Id*. at 7. Similarly, Principal argues that Doctor Arizpe did not satisfy the terms of the Capital Sum rider because he can see out of both eyes, has full use of his left hand, has limited use of his right hand, and can use his right foot with the assistance of his right ankle orthotic device. *Id*. at 8. Finally, Principal asserts that its denial of Doctor Arizpe's claim for Catastrophic Disability benefits would still not count as a breach of contract, even if the court were to conclude that Principal's illustration was a part of Doctor Arizpe's policy. This is because, as Principal contends, Doctor Arizpe is not ADL disabled, cognitively impaired, or presumptively disabled. *Id*. at 10-11.

Unsurprisingly, Doctor Arizpe disagrees with Principal and in his response argues that he qualifies for benefits under the Capital Sum, Presumptive Disability, and Catastrophic Disability riders as written. Response at 12. His main argument is

---

[19]     Principal also points out that Doctor Arizpe admitted in his deposition that he believed he did not satisfy the terms of either the Catastrophic Disability or Presumptive Disability riders as they appeared in his policy. Brief in Support at 7 (citing Appendix in Support at 64, 66).

that because his policy does not define the phrase "total loss of use," said phrase is ambiguous and must be construed in his favor.[20]  *Id*. at 14.  Doctor Arizpe thus contends he suffers from the "total loss of use" of his right hand and foot, thereby satisfying the terms of the Capital Sum, Presumptive Disability, and Catastrophic Disability riders because: (1) he suffers from hemiaparesis of his right side; (2) without the use of his orthotic, his right foot is useless; (3) even with his orthotic on, he has trouble walking due to balance issues; and (4) he has no sensation in his right hand and cannot tell where his right hand is in space.[21]  *Id*. at 14-15.

In its reply, Principal avers that Doctor Arizpe's arguments all miss the mark. First, Principal argues that the evidence before the court–including Doctor Maher's report and Doctor Arizpe's own testimony–clearly establishes that Doctor Arizpe has not suffered a "total loss of use" of his right hand and foot.  Reply at 16.  Next, Principal reiterates its previous argument that precedent establishes that Doctor

---

[20]    Doctor Arizpe also contends that he has shown he is totally disabled because his treating physician, Doctor Elizabeth Maher, has stated that he has suffered a total loss of the use of one hand and one foot.  As stated earlier when analyzing Principal's motion to strike, however, the court cannot consider this evidence because it is contradicted by her prior deposition testimony, her prior medical records, her letter, and her own report.  Accordingly, the court does not consider this argument.

[21]    When discussing his right hand Doctor Arizpe mentions that his alleged lack of sensation in his right hand "could obviously be very dangerous for one to administer anesthesia."  Response at 15.  This argument is irrelevant.  His ability to administer anesthesia has no bearing on whether he has lost "total use" of his hand.

Arizpe has not suffered a "total loss of use" of his right foot because he can use his foot with his orthotic.  *Id*. at 17.  Following this, Principal then addresses Doctor Arizpe's argument that because the policy does not define "total loss of use," the phrase is ambiguous and should be construed in Doctor Arizpe's favor.  *Id*. at 17-18.  While Principal agrees the phrase is undefined, Principal asserts that it is not ambiguous because Texas law requires undefined terms to be given their ordinary meaning, and the ordinary meaning of the phrase is clear.  *Id*. at 17-9.

Having read the parties' arguments and authorities cited therein, the court concludes that summary judgment should be granted in Principal's favor as to Doctor Arizpe's breach of contract claim.

The court agrees with Principal that the "total loss of use" language in Doctor Arizpe's policy—and specifically the Catastrophic Disability, Presumptive Disability, and Capital Sum riders—is not ambiguous just because it is undefined.  "When a policy lacks a definition, the court must give the terms their plain meaning." *Shamoun & Norman, LLP v. Ironshore Indemnity, Inc.*, 56 F. Supp. 3d 840, 848 (N.D. Tex. 2014) (Fish, J.).  In addition, "[a] written contract is ambiguous if its language is subject to two or more reasonable interpretations but is not ambiguous if it is so worded that it can be given a definite or certain legal meaning." *Cincinnati Specialty Underwriters Insurance Co. v. Juan Francisco Chajon*, No. 3:16-CV-3180-G, 2017 WL 3233045 at *2 (N.D. Tex. July 31, 2017) (Fish, Senior J.).  Accordingly, for the

"total loss of use" language to be ambiguous, the court must conclude the plain

meaning of this language is incapable of being given a definite legal meaning and is

susceptible to at least two reasonable interpretations.

Here, the court cannot reach this conclusion.  In the court's view, the plain

meaning of "total loss of use for any and every purpose or activity without possibility

of recovery," *see* Appendix in Support at 148-49, 154, is clear.  To satisfy this

language, Doctor Arizpe must have suffered the absolute and irrecoverable loss of a

body part listed in the Catastrophic Disability, Presumptive Disability, and Capital

Sum riders, thereby rendering the body part at issue useless for all purposes and

activities.  Because the court finds that the "total loss of use" language in Doctor

Arizpe's policy has a definite plain meaning, the court declines Doctor Arizpe's

invitation to construe this language in his favor and concludes that his policy is

unambiguous.[22]

---

[22]    The court is aware that other courts have concluded that phrases such
as "total and irrecoverable loss of sight" and "entire loss of sight" only require the
"loss of the practical use of sight" rather than total blindness.  See *Cotton v. Provident
Life and Casualty Insurance Co.*, 951 F. Supp 395, 399-401 (E.D. New York 1997)
(listing cases).  The language in Doctor Arizpe's policy does not provide for benefits
due solely to a "total and irrecoverable loss," however.  The policy specifies that the
loss must be for "*every purpose and activity*."  Appendix in Support at 148-149
(emphasis added).   It is because Doctor Arizpe's includes this additional language
that the court cannot conclude, like the courts mentioned in *Cotton*, that his policy
only requires the loss of practical use.

Next, the court also agrees with Principal that its denial of Doctor Arizpe's claims for benefits did not constitute a breach of contract because Doctor Arizpe does not satisfy the terms of either the Presumptive Disability, Catastrophic Disability, or Capital Sum riders as written in his policy.[23]

To satisfy the terms of both the Presumptive Disability and Catastrophic Disability riders as they appear in his policy, Doctor Arizpe must have suffered the "total loss of use for any and every purpose or activity without any possibility of recovery" of his power of speech, hearing in both ears, sight of both eyes, or "[t]he use of both hands, both feet, or one hand and one foot." Here, the evidence before the court establishes that Doctor Arizpe fails to satisfy these requirements. Doctor Arizpe has not provided the court with any evidence to demonstrate that he has lost his power of speech, hearing in both ears, or sight of both eyes.[24] Moreover, by his own admission, Doctor Arizpe has not suffered the loss of both hands or both feet. *See* Appendix in Support at 50. Nevertheless, Doctor Arizpe contends that there is at

---

[23] In his response to Principal's motion for summary judgment, Doctor Arizpe argued only that he satisfied the terms of these riders as they appear in his policy. Response at 12. The terms of the Presumptive Disability, Catastrophic Disability, and Capital Sum riders do not provide for benefits if Doctor Arizpe is ADL disabled. Appendix in Support at 148-49, 154. The court will thus not consider whether Doctor Arizpe satisfies the Catastrophic Disability rider based on his status as ADL disabled. In any event, Doctor Arizpe makes no argument that his breach of contract claim is based on his status as ADL disabled.

[24] In fact, in his deposition Doctor Arizpe testified that he is able to hear out of both ears and see out of both eyes. Appendix in Support at 50.

least a question of fact as to whether he has suffered the total loss of use of one hand and one foot. Response at 14-16. In particular, he avers that because he suffers from hemiparesis of his right side and can no longer use his right foot without his ankle orthotic device, he has suffered a total loss of use of his right hand and right foot.

While the evidence before the court establishes Doctor Arizpe's hemiparesis, *see* Appendix in Support of Response at 141; Appendix in Support at 223, it also firmly establishes that Doctor Arizpe has not suffered the "total loss of use for any and every purpose" of his right hand. Not only has Doctor Arizpe admitted so in his deposition testimony, *see* Appendix in Support at 50-51, but his medical records also demonstrate his ability to use his right hand. *See e.g.*, Appendix in Support at 182 (Doctor Hamstra's evaluation of Doctor Arizpe for proton therapy, stating "[s]trength is 3+ in the right upper and lower extremity and 4+ on the left"), 222 (discharge summary providing "right upper extremity gross motor coordination improved from maximum impairment to minimal impairment . . . fine motor coordination improved from severe impairment to moderate impairment . . . extremity grip and pinch strength improved from moderate/maximum impairment to minimal impairment"), 342 (adaptive driving evaluation stating that Doctor Arizpe has decreased sensation in right hand, but that he is able to do heavy household work and exercise six days a week). Both Doctor Maher's deposition testimony and her November 13, 2018 letter express her belief that Doctor Arizpe has some functional

use of his right hand.  *See* Exhibit C to Motion to Strike at 20; Appendix in Support

of Response at 152.  In short, while the court is sympathetic to Doctor Arizpe's

current situation, the evidentiary record does not convince the court that a

reasonable jury could conclude that he has suffered the total loss of use for all

purposes of his right hand and thus render a verdict in his favor as to Principal's

alleged breach of the Presumptive Disability and Catastrophic Disability riders.  See

*Northwestern Mutual Life Insurance Co. v. Stein*, No. Civ.A. 98-CV-4820, 2005 WL

88997, at *4-7 (E.D. Pa. 2005) (granting summary judgment in favor of insurance

company on the insured's breach of contract claim for failure to pay presumptive

disability benefits where court concluded the insured did not suffer a total and

irrecoverable loss because he had some practical use of his hands).

To satisfy the terms of the Capital Sum rider as written in his policy, Doctor

Arizpe must have suffered the total loss of use for any and every purpose or activity

without any possibility of recovery of the use of a hand or foot, or the sight of an eye.

Appendix in Support at 148.  As set forth above, the court has concluded that Doctor

Arizpe has not shown that he suffered the total loss of his eyes or either of his hands.

Thus, for Doctor Arizpe to avoid summary judgment on this issue, he must show that

there is at least a question of fact as to whether he has suffered the total loss of either

of his feet.  Doctor Arizpe has not met this burden.

Here, although the evidence before the court establishes his right-side hemiparesis, *see* Appendix in Support of Response at 141; Appendix in Support at 223, it also shows that Doctor Arizpe can walk with his right foot while wearing his orthotic device. *See* Appendix in Support at 62 (Doctor Arizpe's deposition testimony admitting that he can walk with his orthotic on), 67 (Doctor Arizpe's deposition testimony admitting that his medical records state that he is able to walk without a walker), 240 ("He is now able to walk without a walker"), 264 (admission from Rebekah Arizpe that with his orthotic on, Doctor Arizpe was able to walk). Despite Doctor Arizpe's arguments to the contrary, the fact that Doctor Arizpe must wear his orthotic to walk with his right foot does not mean that there is a question of fact that prevents summary judgment. As pointed out by Principal, courts have routinely found that an insured cannot predicate a disability claim for the "total loss" of a body part, where the insured can use the body part with the aid of an adaptive device such as a hearing aid or corrective lenses. *Arnold v. Life Insurance Co. of North America*, 894 F.2d 1566, 1568 (11th Cir. 1990) (concluding that trial court did not err in dismissing the insured's complaint where evidence showed that the insured had substantially normal eyesight with corrective lenses and thus did not suffer total loss of sight); *Smith v. Great American Life Insurance Co.*, 125 Ga. App. 587, 588 (Ga. App. 1972) (affirming directed verdict for insurance company where evidence showed that with corrective glasses the insured had not suffered irrecoverable loss of entire sight);

*Reliable Life Insurance Co. v. Steptoe*, 471 S.W.2d 430, 432 (Tex. Civ. App.–Tyler 1971, no writ) ("loss of sight which can be recovered, regained or remedied through proper medical or surgical treatment is not to be considered an irrecoverable loss unless such medical or surgical treatment would not be undergone by an ordinary prudent person under the same or similar circumstances"); *Southland Life Insurance Co. v. Dunn*, 71 S.W.2d 1103, 1106 (Tex. Civ. App.– El Paso 1934, writ dism'd) (concluding the insured did not suffer entire and irrecoverable loss of sight where evidence showed that the loss of sight could be restored or improved through an operation); *Mutual Life Insurance Co. of New York v. Ellison*, 223 F.2d 686, 691-94 (5th Cir.), *cert. denied*, 350 U.S. 845 (1955) (concluding that the insured plaintiff failed to show the irrecoverable loss of the use of both hands where he provided no evidence that he availed himself of all reasonable means and remedies to remove his disability). As the evidentiary record before the court establishes that Doctor Arizpe can walk on his right foot with his orthotic, the court concludes that he has some use of his right foot. Consequently, the court finds that there is no question of fact as to whether Doctor Arizpe satisfies the terms of the Capital Sum rider.

Ultimately, because the court concludes that there are no questions of material fact as to whether Doctor Arizpe satisfies the terms of the Presumptive Disability, Catastrophic Disability, or Capital Sum riders, the court grants summary judgment in Principal's favor as to Doctor Arizpe's breach of contract claim.

## III. CONCLUSION

For the reasons stated above, Principal's motion to strike is **GRANTED IN PART** and **DENIED IN PART** and Principal's motion for summary judgment is **GRANTED**.  By separate order, judgment will be entered in favor of Principal.

**SO ORDERED.**

July 9, 2019.

_____
A. JOE FISH
**Senior United States District Judge**